**MEMBERSHIP INTEREST PURCHASE AGREEMENT BY AND AMONG**

YVONNE OKEKE

YVONNE ENTERPRISES LLC

And

LUX PHARMA HOLDINGS, LLC

Dated as of August 14, 2020

DocuSign Envelope ID: 86420FC2-52AE-43F6-9F0F-453C00216489
Case 8:21-cv-02224-VMC-AAS   Document 6-1   Filed 10/11/21   Page 2 of 14 PageID 86

EXHIBIT "A"

# MEMBERSHIP INTEREST PURCHASE AGREEMENT

This MEMBERSHIP INTEREST PURCHASE AGREEMENT (this "**Agreement**") is made and entered into as of August 14, 2020 among YVONNE OKEKE ("**Seller**"), YVONNE ENTERPRISES LLC, a Florida limited liability company D/B/A KAY PHARMACY ("**Company**") and LUX PHARMA HOLDINGS, LLC, a Wyoming limited liability company ("**Buyer**").

## RECITALS

WHEREAS, Buyer desires to acquire from Seller all of the limited liability company membership interests (the "**Membership Interests**") of the Company, upon the terms and subject to the conditions set forth in this Agreement; and

WHEREAS, Seller desires to sell the Membership Interests to Buyer upon the terms and subject to the conditions of this Agreement.

WHEREAS, capitalized terms used but not defined in the context of the Section in which such terms first appear shall have the meanings set forth in Section 7.10..

NOW, THEREFORE, in consideration of the mutual representations, warranties, covenants and agreements contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## ARTICLE I. PURCHASE AND SALE OF MEMBERSHIP INTERESTS

Section 1.1. **Purchase and Sale of Membership Interests**. Upon the terms and subject to the conditions set forth in this Agreement, on the Closing Date, Seller shall sell to Buyer, and Buyer shall purchase from Seller, all of Seller's rights, title and interest in and to the Membership Interests, free and clear of all liens, claims and encumbrances of any nature whatsoever (collectively, "**Liens**").

Section 1.2 **Purchase Price.**

(a) *Total Purchase Price.* The purchase price for the Membership Interests (the "**Purchase Price**") shall be equal to (i) $250,000.00 (the "**Cash Portion**"), (ii) $124,474.13 the pay-off value of the mortgage note owed by the Company for the Property pursuant to the Pay-Off Letter provided by the holder of the mortgage note (the "**Pay-off Portion**") (collectively with the Cash Portion the "**Closing Purchase Price**"), and (iii) plus a secured note in the principal amount of $175,525.87 secured by the assets of the Buyer, including a pledge of the Membership Interests, subject to adjustments due and payable within 180 days of the Closing Date, in substantially the form attached as Exhibit A (the "**Note**").

(b) *Closing Purchase Price Payment.* The Closing Purchase Price will be paid on the Closing Date by means of wire transfer in immediately available funds in accordance with the funds flow memorandum set forth on Schedule 1.2(b).

(c) *Note.* Buyer will deliver the Note, provided that the pay-off amount of the Note will be the lesser of (i) $175,525.87 and any accrued interest, and (ii) (A) the difference of (Y) the amount of the Appraised Value of the Property (Z) minus the Pay-off Portion, provided that the Appraised Value of the Property will not exceed $300,000.00 for the purposes of this Section 1.2(c) (the "**Net Property Value Price**").

## ARTICLE II. REPRESENTATIONS AND WARRANTIES OF SELLER AND THE COMPANY.

Seller and the Company hereby represent and warrant to Buyer as follows:

Section 2.1. **Organization and Power**. The Company is a limited liability company duly formed, validly existing and in good standing under the laws of the State of Florida and has all power and authority necessary to own or lease its properties and assets and to carry on its business as currently conducted. The Company is duly qualified or licensed to do business and is in good standing in each of the jurisdictions in which the character of the properties owned or held under lease by it or the nature of the business transacted by it makes such qualification necessary, except where

DocuSign Envelope ID: 86420FC2-52AE-43F6-9F0F-453C00216489
Case 8:21-cv-02224-VMC-AAS Document 6-1 Filed 10/11/21 Page 3 of 14 PageID 87

EXHIBIT "A"

the failure to be so qualified or in good standing when taken together with all other such failures, has not, and would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

Section 2.2. **Capitalization.**

(a) The authorized capital of the Company consists of membership interests. At the close of business on the Business Day immediately preceding the date of this Agreement, 100% of the Membership Interests were issued and outstanding.

Section 2.3. **Authorization.** Each of the Seller and the Company has the requisite power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby and to perform its obligations hereunder. The execution, delivery and performance by the Seller and the Company of this Agreement, and the consummation by the Seller and the Company of the transactions contemplated hereby, have been duly and validly authorized by the Company Managers and no other proceedings on the part of the Seller and the Company are necessary to authorize this Agreement or to consummate the transactions contemplated hereby or to perform the respective obligations of the Seller and Company hereunder. This Agreement has been duly and validly executed and delivered by the Seller and the Company and, assuming this Agreement constitutes the legal, valid and binding agreement of Buyer, constitutes a legal, valid and binding agreement of the Seller and the Company, enforceable against the Seller and the Company in accordance with its terms, except to the extent that enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and similar Laws, now or hereafter in effect, affecting creditors' rights generally and by general principles of equity.

Section 2.4. **Non-Contravention; Filings and Consents.**

(a) The execution, delivery and performance by the Seller and the Company of this Agreement and the consummation by the Seller and the Company of the transactions contemplated hereby do not and will not (with or without notice or lapse of time, or both):

(1) contravene, conflict with, or result in any violation or breach of any provision of the articles of organization or operating agreement of the Company;

(2) contravene, conflict with or result in a violation or breach of any provision of any applicable Law or Order;

(3) require any consent or approval under, violate, conflict with, result in any breach of or any loss of any benefit under, or constitute a change of control or default under, or result in termination or give to others any right of termination, vesting, amendment, acceleration or cancellation of any contract to which the Company or any Subsidiary of the Company is a party, or by which they or any of their respective properties or assets may be bound or affected or any Governmental Authority affecting, or relating in any way to, the property, assets or business of the Company; or

(4) result in the creation or imposition of any Lien on any asset of the Company.

(b) The execution, delivery and performance of this Agreement by the Seller and the Company and the consummation of the transactions contemplated hereby by the Seller and the Company do not and will not require any consent, approval, authorization or permit of, action by, filing with or notification to, any Governmental Authority, other than (i) and (ii) any actions or filings the absence of which would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect. For purposes of this Agreement, "**Governmental Authority**" means any national, state or local, domestic or foreign or international, government or any judicial, legislative, executive, administrative or regulatory authority, tribunal, agency, body, entity or commission or other governmental, quasi-governmental or regulatory authority or agency, domestic or foreign or international.

Section 2.5. **Properties.**

(a) The Company has good and marketable title to, or in the case of leased tangible assets, valid leasehold interests in, all of the real property and tangible assets used in the conduct of its business and all such property and assets,

DocuSign Envelope ID: 86420FC2-52AE-43F8-9F0F-453C00216489
Case 8:21-cv-02224-VMC-AAS Document 6-1 Filed 10/11/21 Page 4 of 14 PageID 88

EXHIBIT "A"

other than real property and assets in which the Company has leasehold interests, are free and clear of all Liens, except for Permitted Liens.

(b) With respect to the Property, neither the Company has subleased, licensed or otherwise granted anyone a right to use or occupy such Property or any portion thereof. The Company enjoys peaceful and undisturbed possession of the Property. The Property is in good condition and has been maintained in good repair in a manner consistent with standards generally followed with respect to similar properties, and satisfactorily serves the purposes for which it is used in the business of the Company.

Section 2.6. **Brokers; Certain Expenses.** Except for the Seller's and Company's agreement with Transworld Business Advisors, no agent, broker, investment banker, financial advisor or other firm or Person, other than those whose fees and expenses shall be paid entirely by the Seller, is or shall be entitled to receive any brokerage, finder's, financial advisor's, transaction or other fee or commission in connection with this Agreement or the transactions contemplated hereby based upon agreements made by or on behalf of the Seller or the Company.

Section 2.7. **No Litigation.** No claims have been asserted against the Company, either in pending or anticipated litigation or arbitration, and neither the Seller or the Company are aware of any potential claims or litigation.

### ARTICLE III. REPRESENTATIONS AND WARRANTIES OF BUYER.

Buyer represents and warrants to Seller as follows:

Section 3.1. **Organization.** Buyer is a limited liability company duly formed, validly existing and in good standing under the laws of the jurisdiction of its formation and has the requisite power to carry on its business as now conducted.

Section 3.2. **Authority for this Agreement.** Buyer has all necessary power and authority to enter into this Agreement and to consummate the transactions contemplated by this Agreement. The execution and delivery of this Agreement by Buyer and the consummation by Buyer of the transactions contemplated hereby have been duly and validly authorized by all necessary action on the part of Buyer and no other proceedings on the part of Buyer are necessary to authorize this Agreement or to consummate the transactions contemplated by this Agreement. This Agreement has been duly executed and delivered by Buyer and, assuming due authorization, execution and delivery of this Agreement by Seller, constitutes a legal, valid and binding agreement of Buyer, enforceable in accordance with its terms against Buyer, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to creditors' rights generally and by general principles of equity.

Section 3.3. **Consents and Approvals.** The execution and delivery of this Agreement by Buyer and the consummation by Buyer of the transactions contemplated hereby require no consent, approval, authorization or filing with or notice to any Governmental Authority, other than (i) compliance with any applicable foreign competition laws, compliance with any applicable requirements of Securities Act of 1933, as amended (the "Securities Act"), or the Securities and Exchange Act of 1934, as amended (the "Exchange Act") and any other U.S. state or federal securities laws; and (iii) any actions or filings the absence of which are not reasonably likely to prevent, materially delay or materially impair the ability of Buyer to consummate the transactions contemplated by this Agreement.

Section 3.4. **Non-Contravention.** The execution, delivery and performance of this Agreement by Buyer and the consummation of the transactions contemplated by this Agreement do not and will not (with or without notice or lapse of time or both) (i) contravene, conflict with, or result in any violation or breach of any provision of the certificate of formation or operating agreement of Buyer; (ii) assuming compliance with the matters referred to in Section 3.3., contravene, conflict with or result in a violation or breach of any Law or Order; or (iii) require any consent or approval under, violate, conflict with, result in any breach of any loss of any benefit under, or constitute a change of control or default under, or result in termination or give to others any right of termination, vesting, amendment, acceleration or cancellation of any contract to which Buyer is a party, or by which its properties or assets may be bound or affected, with such exceptions, in the case of each of clauses (ii) and (iii) of this section, would not

DocuSign Envelope ID: 86420FC2-52AE-43F6-9F0F-453C00216489  Case 8:21-cv-02224-VMC-AAS   Document 6-1   Filed 10/11/21   Page 5 of 14 PageID 89

EXHIBIT "A"

reasonably be expected to prevent, materially delay or materially impair the ability of Buyer to consummate the transactions contemplated by this Agreement.

## ARTICLE IV. COVENANTS

Section 4.1. **Non-Competition and Non-Solicitation.**

(a) During the period commencing with the date of this Agreement and ending on the third anniversary of the Closing Date, Seller shall not, and shall cause its Affiliates not to, directly or indirectly, engage in, own, be employed by, consult with or otherwise render services to any Person who is engaged in any Competing Business; provided, however, that the ownership of an equity interest of not more than 2% in a publicly traded entity that is engaged in a Competing Business, without more, shall not constitute a violation of this covenant.

(b) If Seller shall be in breach of any of the provisions of subsection (a) above, then the time periods set forth in that subsection shall, as they relate to the breaching party, be extended by the length of time during which the breaching party is in breach of any of those provisions.

(c) As used in this Section 4.1., the following terms have the following meanings:

(1) "**Competing Business**" means a retail pharmacy.

(2) "**Territory**" means within 15 miles of the Property, in each case in which the Company or any of its Affiliates has marketed or sold any Products at any time during the three-year period immediately prior to the date of this Agreement.

(d) Seller acknowledges and agrees that the Company would be irreparably damaged if any of the provisions of this Section 4.1. are not complied with in accordance with their specific terms or are otherwise breached. Accordingly, it is agreed that Buyer and the Company shall be entitled to an injunction or injunctions to prevent breaches of this Section 4.1. and shall have the right to specifically enforce Section 4.1. and its terms and provisions against Seller in addition to any other remedy to which Buyer and the Company may be entitled under this Agreement, at law or in equity.

(e) It is the intent of the parties that each provision of this Section 4.1. be adjudicated valid and enforced to the fullest extent permissible under the laws and public policies of each jurisdiction in which adjudication of the validity or enforcement of Section 4.1. is sought. In furtherance of the foregoing, each provision of Section 4.1. shall be severable from each other provision, and any provision of Section 4.1. that is prohibited or unenforceable in any jurisdiction shall be subject to the following: (1) if the prohibited or unenforceable provision is contrary to or conflicts with any requirement of any statute, rule or regulation in effect in the jurisdiction, then the requirement shall be incorporated into, or substituted for, the prohibited or unenforceable provision to the minimum extent necessary to make the provision valid or enforceable; (ii) the Governmental Entity or arbitrator considering the matter is authorized to (or, if that Governmental Entity or arbitrator is unwilling or fails to do so, then the parties shall) amend the unenforceable provision to the minimum extent necessary to make the provision valid or enforceable, and the parties consent to the entry of an order amending the provision to that extent for that purpose; and (iii) if any unenforceable provision cannot be or is not reformed and made valid or enforceable under this Section 4.1., then the prohibited or unenforceable provision shall be ineffective in that jurisdiction to the minimum extent necessary to make the remainder of Section 4.1. valid or enforceable in that jurisdiction. Any application of the foregoing provisions to any provision of Section 4.1. shall not (x) affect the validity or enforceability of any other provision of Section 6.1. or (y) prevent the prohibited or unenforceable provision from being adjudicated valid or enforced as written in any other jurisdiction.

Section 4.2. **Best Efforts; Government Filings.** Subject to the terms and conditions of this Agreement, each of the Seller and Company will use their commercially reasonable efforts and Buyer shall use its best efforts to take, or cause to be taken, all actions and to do, or cause to be done, and to assist and cooperate with the other parties in doing, all things necessary, proper or advisable under applicable Law to consummate transactions contemplated by this Agreement, including (i) the obtaining of all necessary actions or nonactions, waivers, consents and approvals from

Case 8:21-cv-02224-VMC-AAS Document 6-1 Filed 10/11/21 Page 6 of 14 PageID 90
DocuSign Envelope ID: 86420FC2-52AE-43F6-9F0F-453C00216489

EXHIBIT "A"

Governmental Authorities and the making of all necessary registrations and filings (including filings with Governmental Authorities, if any) and the taking of all reasonable steps as may be necessary to obtain an approval or waiver from, or to avoid an action or proceeding by, any Governmental Authorities, (ii) the delivery of required notices to, and the obtaining of required consents or waivers from, third parties and (iii) the execution and delivery of any additional instruments necessary to consummate the transactions contemplated hereby and to fully carry out the purposes of this Agreement. Buyer shall use its best efforts to take, or cause to be taken, all actions and to do, or cause to be done a submission of a DEA Form 224 Application for Registration no later than the close of the business day after the Closing.

Section 4.3. **Press Releases.** Buyer and Seller shall consult with each other before issuing any press release or making any other public statement with respect to this Agreement or the transactions contemplated hereby and shall not issue any such press release or make any such other public statement without the consent of the other party, which shall not be unreasonably withheld, except as such release or statement may be required by applicable Law or any listing agreement with or rule of any national securities exchange, in which case the party required to make the release or statement shall consult with the other party about, and allow the other party reasonable time (to the extent permitted by the circumstances) to comment on, such release or statement in advance of such issuance, and the party will consider such comments in good faith.

Section 4.4. **Accounts Receivable; Reconciliation.** The Company's Accounts Receivable as of the end of the business day on the Closing Date (the "**Pre-Closing AR**") will be paid weekly within three (3) business days of receipt by the Company for at least one year from the Closing Date. As promptly as practicable following the end of each week after the Closing Date for up to one year after the Closing Date, Buyer shall prepare and deliver to Seller a preliminary report of the Company's Accounts Receivable outstanding prior to the Closing Date received during such week (the "Preliminary AR Report"). Promptly following receipt of the Preliminary AR Report, Seller may review the same and, within five (5) business days after the date of such receipt, may deliver to Buyer a notice setting forth any objections to the Preliminary AR Report, together with a summary of the reasons therefore and calculations which, in its view, are necessary to eliminate such objections (an "AR Objection Notice"). If Seller does not so object within such five (5) business day period, the Preliminary AR Report shall be final and binding. Buyer and Seller shall use their reasonable efforts to resolve by written agreement (the "Agreed AR Adjustments") any differences as to the Preliminary AR Report and, if Seller and Buyer so resolve any such differences, the Preliminary AR Report, as adjusted by the Agreed AR Adjustments, shall be final and binding for purposes of this Agreement. The parties hereto shall make available to Buyer, Seller, and their respective representative such books, records and other information (including work papers) as any of the foregoing may reasonably request to prepare or review the Preliminary AR Report.

Section 4.5. **Mortgage Release; Documentary Stamp Taxes.** The satisfaction of mortgage will be filed within forty-five (45) days of payment of the Pay-off Portion. Buyer hereby agrees to pay at Closing any fees imposed by the State of Florida including documentary stamp tax or intangible tax arising from the Note.

## ARTICLE V. CLOSING AND CLOSING CONDITIONS

Section 5.1. **Closing.** The closing of the transactions contemplated by this Agreement (the "**Closing**") shall take place at 1:00 p.m., local time, on August 14, 2010 at the offices of the Company, or at another time or place, or on another date not later than August 15, 2020, as the parties may mutually agree. The date on and time at which the Closing occurs is referred to in this Agreement as the "**Closing Date.**"

Section 5.2. **Conditions Precedent to Obligations of Buyer.** The obligations of the Buyer under this Agreement to proceed with the Closing shall be subject to the satisfaction by the Seller and the Company on or prior to the Closing Date of each of the following conditions precedent:

(a) *Accuracy of Representations and Warranties.* The representations and warranties of the Seller and the Company set forth in this Agreement shall be true and correct on and as of the Closing Date with the same force and effect as

DocuSign Envelope ID: 86420FC2-52AE-43F6-9F0F-453C60216489
Case 8:21-cv-02224-VMC-AAS Document 6-1 Filed 10/11/21 Page 7 of 14 PageID 91

EXHIBIT "A"

though made on and as of that date (other than representations and warranties that are made as of a specific date, which representations and warranties shall have been true and correct on and as of such date).

(b) *Performance and Compliance.* Seller and the Company shall have performed or complied in all material respects with each covenant and agreement to be performed or complied with by them under this Agreement on or prior to the Closing Date.

(c) *Consents and Approvals.* Seller and the Company shall have obtained or made each consent, authorization, approval, exemption, filing, registration or qualification, required to be obtained or made by any of them in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated by this Agreement.

(d) *Litigation.* There shall be no pending or threatened action by or before any Governmental Entity or arbitrator (i) seeking to restrain, prohibit or invalidate any of the transactions contemplated by this Agreement or (ii) seeking monetary relief against any Buyer by reason of the consummation of these transactions, and there shall not be in effect any order, writ, judgment, injunction or decree issued by any Governmental Entity by which Buyer or any of its properties or assets is bound that has that effect.

(e) *Material Adverse Change.* No event shall have occurred and no condition shall exist that constitutes or, with the giving of notice or the passage of time or both, is likely to constitute a Material Adverse Change.

(f) *Assignment of Interests.* Assignment of the Purchased Membership Interests set forth in Section 1.2 hereof.

(g) *Resignation.* An executed Resignation of Seller from each position she holds with the Company.

(h) *Pay-off Letter.* A pay-off letter from the holder of the mortgage note owed by the Company for the Property setting forth the payoff amount owed by the Company.

(i) *Independent Contractor Agreement.* An independent contractor agreement between the Company and the Seller in substantially the form attached as Exhibit B.

Section 5.3. **Conditions Precedent to Obligations of Seller.** The obligations of Seller under this Agreement to proceed with the Closing shall be subject to the satisfaction by Buyer on or prior to the Closing Date of each of the following conditions precedent:

(a) *Accuracy of Representations and Warranties.* The representations and warranties of Buyer set forth in this Agreement shall be true and correct on and as of the Closing Date with the same force and effect as though made on and as of that date.

(b) *Performance and Compliance.* Buyer shall have performed or complied in all material respects with each covenant and agreement to be performed or complied with by it under this Agreement on or prior to the Closing Date.

(c) *Consents and Approvals.* Buyer shall have obtained or granted each consent, authorization, approval, exemption, filing, registration or qualification required to be obtained or granted by it in connection with the execution, delivery and performance of this Agreement and the consummation of the transactions contemplated by this Agreement.

(d) *Litigation.* There shall be no pending or threatened action by or before any Governmental Entity or arbitrator seeking to restrain, prohibit or invalidate any of the transactions contemplated by this Agreement, and there shall not be in effect any Governmental Order that has that effect.

(e) *Independent Contractor Agreement.* An independent contractor agreement between the Company and the Seller in substantially the form attached as Exhibit B.

(f) *Deposits.* Payment by means of check or wire transfer to Seller of any deposits, prorated expenses and prepaid expenses for utility services, leases, insurance, etc., to the extent they remain with the Company.

(g) *Security Agreement.* A security agreement between the Buyer and the Seller in substantially the form attached as Exhibit C.

DocuSign Envelope ID: 86420FC2-32AE-43F6-9F0F-453C66216480
Case 8:21-cv-02224-VMC-AAS   Document 6-1   Filed 10/11/21   Page 8 of 14 PageID 92

EXHIBIT "A"

(h) *Pledge*. A pledge between the Buyer and the Seller in substantially the form attached as Exhibit D. The Note, pledge and security agreement are collectively the "Loan Documents."

## ARTICLE VI. INDEMNIFICATION

Section 6.1. **Indemnification by Seller.** Seller shall defend, indemnify and hold harmless Buyer and the Company and their respective directors, managers, officers, employees and agents (each a "**Seller Indemnitee**") from and against any and all claims (including without limitation any investigation, action or other proceeding, damages, losses, liabilities, costs and expenses (including without limitation reasonable attorneys' fees and court costs) that constitute, or arise out of or in connection with:

(a) any misrepresentation or breach of warranty under Article II. (a "**Seller Warranty Breach**"); or

(b) any default by Seller or the Company in the performance or observance of any of their covenants or agreements under this Agreement.

Section 6.2. **Indemnification by Buyer.** Buyer shall defend, indemnify and hold harmless Seller and its partners, directors, managers, officers, employees and agents (each a "**Buyer Indemnitee**") from and against any and all claims (including without limitation any investigation, action or other proceeding), damages, losses, liabilities, costs and expenses (including without limitation reasonable attorneys' fees and court costs) that constitute, or arise out of or in connection with:

(a) any misrepresentation or breach of warranty under Article III. (a "**Buyer Warranty Breach**"); or

(b) any default by Buyer in the performance or observance of any of its covenants or agreements under this Agreement.

Section 6.3. **Representation, Settlement and Cooperation.** If any investigation, action or other proceeding (each a "**Proceeding**") is initiated against any Seller Indemnitee or Buyer Indemnitee (each, an "**Indemnitee**") and the Indemnitee intends to seek indemnification from the Seller or the Buyer (each an "**Indemnitor**"), as applicable, under this Article VI. on account of the Indemnitee's involvement in the Proceeding, then the Indemnitee shall give prompt notice to the applicable Indemnitor; provided, however, that the failure to so notify the Indemnitor shall not relieve the Indemnitor of its obligations under this Article VI. but instead shall reduce those obligations by the amount of damages or increased costs and expenses attributable to the failure to give notice. Upon receipt of notice of a Proceeding for which indemnification is available under this Article VI., the Indemnitor shall diligently defend against the Proceeding on behalf of the Indemnitee at the Indemnitor's own expense using counsel reasonably acceptable to the Indemnitee; provided, however, that if the Indemnitor shall fail or refuse to conduct the defense, or if the Indemnitee has been advised by counsel that it may have defenses available to it which are different from or in addition to those available to the Indemnitor or that its interests in the Proceeding are adverse to the Indemnitor's interests, then the Indemnitee may defend against the Proceeding at the Indemnitor's expense. The Indemnitor or Indemnitee, as applicable, may participate in any Proceeding being defended against by the other at its own expense and shall not settle any Proceeding without the prior consent of the other, which consent shall not be unreasonably withheld. The Indemnitor and Indemnitee shall cooperate with each other in the conduct of any Proceeding.

Section 6.4. **Notice and Satisfaction of Indemnification Claims.** No indemnification claim shall be deemed to have been asserted until the applicable Indemnitor has been given notice by the Indemnitee of the amount of the claim and the facts on which the claim is based (including evidence supporting the amount of the claim). For purposes of this Article VI., notice of an indemnification claim shall be deemed to cover claims arising out of or in connection with all related Proceedings so long as, in the case of Proceedings instituted by third parties, the Indemnitee complies with Section 6.3.. Indemnification claims shall be paid within 30 days after the Indemnitor's receipt of the notice described in this Section 6.4. (including the required evidence of the amount of the claim). Evidence of (a) the amount of the claims for which the Indemnitee seeks indemnification, and (b) the Indemnitor's liability shall be in form and content reasonably satisfactory to the Indemnitor.

Case 8:21-cv-02224-VMC-AAS Document 6-1 Filed 10/11/21 Page 9 of 14 PageID 93
DocuSign Envelope ID: 86420FC2-52AE-43F6-9F0F-453C00216489

EXHIBIT "A"

Section 6.5. **Duration of Indemnification Obligations.** Claims for indemnification under this Article VI. only may be asserted at any time on or prior to the first anniversary of the Closing Date.

Section 6.6. **Indemnification Threshold and Limits.** Notwithstanding any other provision of this Agreement, no Indemnitor shall have any indemnification obligations under Section 6.1.(a), Section 6.1.(c) or Section 6.2.(a) unless and until the claims asserted against the applicable Indemnitor exceed $50,000 in the aggregate (the "**Threshold Amount**"). If indemnification claims exceed the Threshold Amount, the Indemnitor shall be liable for all indemnification claims properly asserted against it, including those comprising the Threshold Amount, up to no more than One Hundred Thousand Dollars ($100,000.00).

Section 6.7. **Exclusive Remedy.** Except: (a) for any equitable remedies which the parties may pursue; and (b) for enforcement actions of any kind or nature regarding the terms and provisions of this Article VI., the indemnification under this Article VI. shall be the parties' sole and exclusive remedy, each against another, with respect to matters arising under this Agreement. The parties waive and release any other rights, remedies, causes of action or claims of any kind or nature arising under this Agreement.

## ARTICLE VII. MISCELLANEOUS

Section 7.1. **Entire Agreement; Assignment; Amendments.** This Agreement (including the Disclosure Schedule and the exhibits and schedules to this Agreement) and the Confidentiality Agreement constitute the entire agreement and supersede all oral agreements and understandings and all written agreements prior to the date hereof between or on behalf of the parties with respect to the subject matter hereof. This Agreement shall not be assigned by any party by operation of law or otherwise without the prior written consent of the other parties hereto. This Agreement may be amended only by a writing signed by each of the parties, and any amendment shall be effective only to the extent specifically set forth in that writing.

Section 7.2. **Severability; Expenses; Further Assurances.** If any term, condition or other provision of this Agreement is determined by a court of competent jurisdiction to be invalid, illegal or incapable of being enforced by any rule of Law or public policy, all other terms, conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated by this Agreement is not affected in any manner materially adverse to any party. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated by this Agreement be consummated as originally contemplated to the fullest extent possible. Except as otherwise specifically provided in this Agreement, each party shall be responsible for the expenses it may incur in connection with the negotiation, preparation, execution, delivery, performance and enforcement of this Agreement. The parties shall from time to time do and perform any additional acts and execute and deliver any additional documents and instruments that may be required by applicable Governmental Rules or reasonably requested by any party to establish, maintain or protect its rights and remedies under, or to effect the intents and purposes of, this Agreement.

Section 7.3. **Enforcement of the Agreement; Jurisdiction; No Jury Trial.**

(a) The parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. It is accordingly agreed that the parties shall be entitled to an injunction or injunctions to prevent breaches or threatened breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement exclusively in the state courts located in Hillsborough County, Florida, or in the event (but only in the event) that such court does not have subject matter jurisdiction over such action or proceeding, in the United States District Court for the Middle District of Florida, Tampa Division, this being in addition to any other remedy to which they are entitled at law or in equity. In addition, each of the parties to this Agreement irrevocably agrees that any legal action or proceeding with respect to this Agreement and the rights and obligations arising under this Agreement, or for recognition and enforcement of any judgment in respect of this Agreement and the rights and obligations arising under this Agreement brought by

Case 8:21-cv-02224-VMC-AAS Document 6-1 Filed 10/11/21 Page 10 of 14 PageID 94
DocuSign Envelope ID: 86420FC2-52AE-43F6-9F0F-453C00216489

EXHIBIT "A"

the other party to this Agreement or its successors or assigns shall be brought and determined exclusively in the state courts located in Hillsborough County, Florida, or in the event (but only in the event) that such court does not have subject matter jurisdiction over such action or proceeding, in the United States District Court for the Middle District of Florida, Tampa Division. Each of the parties to this Agreement hereby irrevocably submits with regard to any such action or proceeding for itself and in respect of its property, generally and unconditionally, to the personal jurisdiction of the aforesaid courts and agrees that it will not bring any action relating to this Agreement or any of the transactions contemplated by this Agreement in any court other than the aforesaid courts. Each of the parties to this Agreement hereby irrevocably waives, and agrees not to assert, by way of motion, as a defense, counterclaim or otherwise, in any action or proceeding with respect to this Agreement, (a) any claim that it is not personally subject to the jurisdiction of the above-named courts for any reason other than the failure to serve in accordance with this Section 7.3.; (b) any claim that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise); and (c) to the fullest extent permitted by the Law, any claim that (i) the suit, action or proceeding in such court is brought in an inconvenient forum; (ii) the venue of such suit, action or proceeding is improper; or (iii) this Agreement, or the subject matter of this Agreement, may not be enforced in or by such courts. Each of Seller and Buyer hereby agrees that service of any process, summons, notice or document by U.S. registered mail to the respective addresses set forth in Section 7.4. shall be effective service of process for any proceeding arising out of, relating to or in connection with this Agreement or the transactions contemplated hereby.

(b) EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY SUIT, ACTION OR OTHER PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER, RELATING TO OR IN CONNECTION WITH THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. EACH PARTY HERETO CERTIFIES THAT (I) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF ANY ACTION, SUIT OR PROCEEDING, SEEK TO ENFORCE THE FOREGOING WAIVER, (II) EACH PARTY UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (III) EACH PARTY MAKES THIS WAIVER VOLUNTARILY AND (IV) EACH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 7.3.(b).

Section 7.4. **Notices.**

All notices and other communications pursuant to this Agreement must be in writing, sent by overnight delivery to the physical addresses set forth below and, where provided, by email or fax to the email addresses or fax number provided below, and will be deemed to have been duly delivered and received on the date reflected on the overnight courier's delivery confirmation:

If to Buyer, to:

LUX PHARMA HOLDINGS, LLC

1712 Pioneer Avenue

Cheyenne, WY 82001

Phil Neuman (PNeuman@Carlislemc.com)

Edward Griffith (eg@thegriffithfirm.com)

Case 8:21-cv-02224-VMC-AAS   Document 6-1   Filed 10/11/21   Page 11 of 14 PageID 95
DocuSign Envelope ID: 86420FC2-52AE-43F6-9F0F-453C00216489

EXHIBIT "A"

If to Seller, to:

YVONNE OKEKE

9780 N 56TH ST

SUITE D

TEMPLE TERRACE, FL 33617

with a copy (which will not constitute notice to Seller) to:

Shaka A. Scott

Shaka A. Scott, P.A.

1228 East 7th Avenue

Suite 200

Tampa FL 33605

Facsimile: (813) 333-0458

From time to time, any party may provide notice to the other parties of a change in its address, email address or fax number through a notice given in accordance with this Section 7.4. The inability to deliver because of changed address of which no notice is given will be deemed to be receipt of the notice as of the date of such inability to deliver.

Section 7.5. **Governing Law.** This Agreement, and any dispute arising out of, relating to, or in connection with this Agreement, shall be governed by and construed in accordance with the Laws of the State of Florida, without giving effect to any choice or conflict of Law provision or rule (whether of the State of Florida or of any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of Florida.

Section 7.6. **Descriptive Headings.** The descriptive headings herein are inserted for convenience of reference only and are not intended to be part of or to affect the meaning or interpretation of this Agreement.

Section 7.7. **Parties in Interest.** This Agreement shall be binding upon and inure solely to the benefit of each party hereto, and nothing in this Agreement, express or implied, is intended to confer upon any other Person any rights or remedies of any nature whatsoever under or by reason of this Agreement.

Section 7.8. **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same agreement. At the Closing, signature pages of counterparts may be exchanged by facsimile or by electronic transmittal of scanned images thereof, in each case subject to appropriate customary confirmations in respect thereof by the signatory for the party providing a facsimile or scanned image and that party's Closing counsel.

Section 7.9. **Termination.**

(a) This Agreement may be terminated at any time prior to the Closing:

(1) by mutual agreement of Buyer and Seller;

(2) by Buyer (A) if there has been a material misrepresentation by Seller or the Company under this Agreement or a material breach by the Seller or the Company of any of their warranties or covenants set forth in this Agreement or (B) if any of the conditions specified in Section 5.2. shall not have been fulfilled within the time required and shall not have been waived by Buyer;

Case 8:21-cv-02224-VMC-AAS Document 6-1 Filed 10/11/21 Page 12 of 14 PageID 96
DocuSign Envelope ID: 86420FC2-52AE-43F6-9F0F-453C00216489

EXHIBIT "A"

(3) by Seller (A) if there has been a misrepresentation by Buyer under this Agreement or a material breach by Buyer of any of its warranties or covenants set forth in this Agreement or (B) if any of the conditions specified in Section 5.3. shall not have been fulfilled within the time required and shall not have been waived by Seller; or

(4) by Buyer or Seller if the Closing shall not have occurred prior to August 15, 2020; provided, however, that Buyer or Seller may terminate this Agreement under this subsection only if the Closing shall not have occurred on or prior to August 15, 2020, for a reason other than a failure by the party or parties asserting the right to terminate to satisfy the conditions to Closing of the other party or parties set forth in Section 5.2. or 5.3..

(b) If this Agreement is terminated by either any party as provided in Section 7.9.(a) then no party shall have any further obligations or liabilities under this Agreement except for obligations or liabilities arising from a breach of this Agreement prior to the termination or that survive the termination by their own terms.

Section 7.10. **Certain Definitions.** For purposes of this Agreement, the following terms shall have the following meanings:

"**Accounts Receivable**" means the balance of money due to the Company for goods or services delivered or used but not yet paid for by customers, including purchases made on credit.

"**Appraised Value**" means the average appraisals of the Property by three (3) professional real estate appraisers. The Seller and Buyer will each pay for an evaluation of the Property's value by a professional appraiser that it selects and equally split the cost of a third appraiser selected by the two party-selected appraisers. All of appraisals will be completed within 30 days after the Closing Date.

"**Business Day**" means any day on which national banks are open for business in the city of New York City, New York.

"**Material Adverse Effect**" means any state of facts, change, development, event, effect, condition, occurrence, action or omission that, individually or in the aggregate, is reasonably expected to result in a material adverse effect on the business, prospects, assets, properties, financial condition, results of operations or prospects of the Company, taken as a whole, or prevent, materially impede or materially delay the consummation by the Company of the transactions contemplated by this Agreement.

"**Permitted Lien**" means (i) Liens for Taxes not yet due and payable or that are being contested in good faith and by appropriate proceedings and for which adequate reserves in accordance with GAAP have been established; (ii) mechanics', carriers', workmen's, repairmen's, materialmen's and other Liens arising by operation of Law; (iii) Liens or security interests that arise or are incurred in the ordinary course of business relating to obligations not yet due on the part of the Company or secure a liquidated amount that are being contested in good faith and by appropriate proceedings and for which adequate reserves in accordance with GAAP have been; (iv) pledges or deposits to secure obligations under workers' compensation Laws or similar Laws or to secure public or statutory obligations; (v) pledges and deposits to secure the performance of bids, trade contracts, leases, surety and appeal bonds, performance bonds and other obligations of a similar nature, in each case in the ordinary course of business; (vi) easements, encroachments, declarations, covenants, conditions, reservations, limitations and rights of way (unrecorded and of record) and other similar restrictions or encumbrances of record, zoning, building and other similar ordinances, regulations, variances and restrictions, and all defects or irregularities in title, including any condition or other matter, if any, that may be shown or disclosed by a current and accurate survey or physical inspection; (vii) pledges or deposits to secure the obligations under the Company's revolving credit facility and other existing indebtedness of the Company; (viii) all Liens created or incurred by any owner, landlord, sublandlord or other Person in title; and (ix) any other Liens which do not materially interfere with the Company's use and enjoyment of real property or materially detract from or diminish the value thereof.

"**Person**" shall mean any individual, corporation, limited liability company, partnership, association, trust, estate or other entity or organization.

"**Property**" means the real estate located at 637 1st Street S., Winter Haven, Florida 33880.

**EXHIBIT "A"**

Section 7.11. **Interpretation.** The words "hereof," "herein," "hereby," "herewith" and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement as a whole and not to any particular provision of this Agreement, and article, section, paragraph, exhibit and schedule references are to the articles, sections, paragraphs, exhibits and schedules of this Agreement unless otherwise specified. Whenever the words "include," "includes" or "including" are used in this Agreement they shall be deemed to be followed by the words "without limitation." The words describing the singular number shall include the plural and vice versa, words denoting either gender shall include both genders and words denoting natural Persons shall include all Persons and vice versa. The phrases "the date of this Agreement," "the date hereof," "of even date herewith" and terms of similar import, shall be deemed to refer to the date set forth in the preamble to this Agreement. Any reference in this Agreement to a date or time shall be deemed to be such date or time in New York City, New York, unless otherwise specified. The parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties and no presumption or burden of proof shall arise favoring or disfavoring any Person by virtue of the authorship of any provision of this Agreement.

[SIGNATURE PAGE FOLLOWS]

EXHIBIT "A"

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed on its behalf by its officers thereunto duly authorized, all at or on the date and year first above written.

BUYER:

LUX PHARMA HOLDINGS, LLC

By _____

Phil Neuman, Member


SELLER:

_Yvonne Okeke_
YVONNE OKEKE

COMPANY:

YVONNE ENTERPRISES LLC

By _Yvonne Okeke_

Name: YVONNE OKEKE

Title: Manager