## SECURED PROMISSORY NOTE

**DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $614.25 ARE BEING PAID IN CONNECTION WITH THIS NOTE AS REQUIRED BY FLORIDA LAW.**

WINTER HAVEN, Florida

$175,525.87 (AS ADJUSTED PURSUANT TO THE TERMS HEREIN)

August 14, 2020

RECITALS.

Promise to Pay. For value received, LUX PHARMA HOLDINGS, LLC, a Wyoming limited liability company ("*Maker*"), hereby promises to pay to the order of YVONNE OKEKE, an individual residing in Tampa, Florida (collectively with any and all of its successors and assigns and/or any other holder of this Note, "*Holder*"), without offset, in immediately available funds in lawful money of the United States of America, without counterclaim or setoff and free and clear of, and without any deduction or withholding for, any taxes or other payments), at 10526 LUCAYA DRIVE, TAMPA, FL 33647, the principal sum of ONE HUNDRED AND SEVENTY-FIVE THOUSAND FIVE HUNDRED TWENTY-FIVE AND 87/100 DOLLARS ($175,525.87) (or the adjusted principal amount calculated on the following terms: the difference of (Y) the amount of the Appraised Value of the Property (Z) minus ONE HUNDRED AND TWENTY-FOUR THOUSAND FOUR HUNDRED SEVENTY-FOUR AND 13/100 DOLLARS ($124,474.13), provided that the Appraised Value of the Property will not exceed $300,000.00 for the purposes of this Note (this "*Note*"), if that amount is less (the aggregate unpaid principal balance of this Note is referred to herein, from time to time, as the "*Principal Debt*")) (the "*Indebtedness*"). The loan evidenced by this Note is referred to herein as the "*Loan*". Unless otherwise defined herein, capitalized terms used in this Note shall have the meanings given such terms in the Membership Interest Purchase Agreement among YVONNE OKEKE ("Seller"), YVONNE ENTERPRISES LLC, a Florida limited liability company D/B/A KAY PHARMACY ("Company") and LUX PHARMA HOLDINGS, LLC, a Wyoming limited liability company ("Buyer") dated as of the date hereof (the "Purchase Agreement").

Section 1. <u>Payments, Time and Place of Payments and Maturity Date</u>. The Principal Debt of this Note shall be due and payable in full 30 days after the Appraisal Value of the Property is determined pursuant to the Purchase Agreement (the "*Maturity Date*"), provided that Maker must designate its appraiser on or before August 21, 2020. Maker hereby agrees to pay any additional fees imposed by the State of Florida including additional documentary stamp tax or intangible tax when advances are made under the Loan, this Note or upon any renewals thereof.

Section 2. <u>Interest</u>.

Section 2.1 <u>Interest Rates</u>. The Principal Debt from day to day outstanding that is not past due shall not bear any interest.

Section 2.2 <u>Computations and Determinations</u>. All interest shall be computed on the basis of a year of 360 days and paid for the actual number of days elapsed (including the first day but excluding the last day) over a term of 30 years for an amortization period of 30 years. Holder shall determine each interest rate applicable to the Principal Debt in accordance with this Note and its determination thereof shall be conclusive in the absence of manifest error. The books and records of Holder shall be conclusive evidence, in the absence of manifest error, of all sums owing to Holder from time to time under this Note, but the failure to record any such information shall not limit or affect the obligations of Maker under the Loan Documents.

Section 2.3 <u>Increased Cost and Reduced Return</u>. If at any time after the date hereof, Holder reasonably determines that the adoption or modification of any applicable Law regarding taxation, Holder's required

Case 8:21-cv-02224-VMC-AAS Document 6-2 Filed 10/11/21 Page 2 of 10 PageID 100
DocuSign Envelope ID: 86420FC2-52AE-43F6-9F0F-453C00216489

EXHIBIT B

levels of reserves, deposits, insurance or capital (including any allocation of capital requirements or conditions), or similar requirements under applicable Laws, or compliance by Holder with any of such requirements, has or would have the effect of (a) increasing Holder's costs related to the Indebtedness, or (b) reducing the yield or rate of return of Holder on the Indebtedness, to a level below that which Holder could have achieved but for the adoption or modification of any such requirements, Maker shall, within fifteen (15) days of any request by Holder, pay to Holder such additional amounts as (in Holder's sole judgment, after good faith and reasonable computation) will compensate Holder for such increase in costs or reduction in yield or rate of return of Holder. No failure by Holder to immediately demand payment of any additional amounts payable hereunder shall constitute a waiver of Holder's right to demand payment of any such amounts at any subsequent time. Nothing herein contained shall be construed or shall so operate as to require Maker to pay any interest, fees, costs or charges greater than is permitted by applicable Laws.

Section 2.4 <u>Past Due Rate</u>. If any amount payable by Maker under any Loan Document is not paid when due (without regard to any applicable grace periods), such amount shall thereafter bear interest at the Past Due Rate (as hereinafter defined) to the fullest extent permitted by applicable Law. In addition, following any Event of Default, all Indebtedness shall bear interest at the Past Due Rate. In either case, accrued and unpaid interest or past due amounts (including interest on past due interest) shall be due and payable on demand, at a rate per annum (the "*Past Due Rate*") equal to the higher of ten percent (10%).

Section 3. <u>Prepayment</u>.

(a) Maker may prepay the Principal Debt, in full at any time but not in part, provided that:

(i) Net Property Value Price has been calculated and determined in accordance with the terms of this Note and the Purchase Agreement.
(ii) Holder shall have actually received from Maker prior irrevocable written notice (the "*Prepayment Notice*") setting forth (A) Maker's intent to prepay, (B) the Indebtedness, and (C) the date on which the prepayment will be made;
(iii) the Prepaid Principal shall be in the amount of the Indebtedness so that the prepayment retires the outstanding balance of this Note in full;
(iv) plus any other sums that have become due to Holder under the Note, Security Documents or Purchase Agreement on or before the date of prepayment but have not been paid; and

(b) If this Note is prepaid in full, any commitment of Holder for further advances shall automatically terminate. No Prepaid Principal may be reborrowed.

Section 4. <u>Late Charges</u>. If Maker shall fail to make any payment under the terms of this Note within five (5) days after the date such payment is due (other than with respect to the payment due at maturity for which there is no grace period), Maker shall pay to Holder on demand a late charge calculated at the Past Due Rate. Such five (5) day period shall not be construed as in any way extending the due date of any payment. The late charge is imposed for the purpose of defraying the expenses of Holder incident to handling such delinquent payment. This charge shall be in addition to, and not in lieu of, any other amount that Holder may be entitled to receive or action that Holder may be authorized to take as a result of such late payment.

Section 5. <u>Secured Note</u>. This Note is secured by the Collateral. As used in this instrument, the term "Collateral" shall refer to all property that is encumbered to secure any obligation of the Note, including without limitation the items described in the schedule attached to this Note, and the property encumbered by the security agreement and pledge (the "Security Documents") that secures this Note, and all other property encumbered by any other security documents from Maker to Holder which secure this Note, together with all property of Maker that for any purpose, whether in trust for Maker or for custody, pledge, collection or otherwise, is now or hereafter in the actual or constructive possession of, or in transit to, Holder in any capacity, its correspondents or agents, and the right of set-off against all deposits and credits of Maker with, and all claims of Maker against, Holder at any time existing. With respect thereto, the parties understand that Holder is authorized at any time without prior notice to

apply such Collateral in whole or in part, and in such order as Holder may elect, to the payment of or as a reserve against the amounts outstanding under the Loan, whether other collateral therefor is deemed adequate or not.

EXHIBIT B

Section 6. <u>Certain Provisions Regarding Payments</u>. All payments made under this Note shall be applied, to the extent thereof, to late charges, to accrued but unpaid interest, to unpaid principal, and to any other sums due and unpaid to Holder under the Loan Documents, in such manner and order as Holder may elect in its sole discretion, any instructions from Maker or anyone else to the contrary notwithstanding. Remittances shall be made without offset, demand, counterclaim, deduction, or recoupment (each of which is hereby waived) and shall be accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks. Acceptance by Holder of any payment in an amount less than the amount then due on any Indebtedness shall be deemed an acceptance on account only, notwithstanding any notation on or accompanying such partial payment to the contrary, and shall not in any way (a) waive or excuse the existence of an Event of Default (as hereinafter defined); (b) waive, impair, or extinguish any right or remedy available to Holder hereunder or under the other Loan Documents; or (c) waive the requirement of punctual payment and performance or constitute a novation in any respect. Payments received after 2:00 p.m. shall be deemed to be received on, and shall be posted as of, the following Business Day. Whenever any payment under this Note or any other Loan Document falls due on a day which is not a Business Day, such payment may be made on the next succeeding Business Day.

Section 7. <u>Events of Default</u>. The occurrence of any one or more of the following shall constitute an *"Event of Default"* under this Note:

(a) Maker fails to pay when and as due and payable any amounts payable by Maker to Holder under the terms of this Note and such failure continues five (5) Business Days.

(b) any covenant, agreement or condition in this Note is not fully and timely performed, observed, or kept, subject to any applicable grace or cure periods set forth in this Note;

(c) the Holder learns that any warranty, representation, certificate or statement of Maker (whether contained in this Note or not) pertaining to or in connection with this Note or the Loan or credit evidenced by this Note, is not true or is in dispute;

(d) Maker becomes insolvent or any insolvency proceedings (as said terms "insolvent" and "insolvency proceedings" are defined in the Uniform Commercial Code of Florida) are instituted or made by or against Maker, or application is made for the appointment of a receiver for Maker or for any of the assets of Maker;

(e) the entry of a judgment against Maker;

(f) the issuing of any levy, attachment or garnishment, or the filing of any lien against any property of Maker;

(g) the determination by Holder that a material adverse change has occurred in the financial condition of Maker (a) from the conditions set forth in the most recent financial statement of such Maker heretofore furnished to Holder, or (b) from the financial condition of such Maker as heretofore most recently disclosed to Holder in any manner;

(h) failure of Maker to do all things necessary to preserve and maintain the value and collectability of the Collateral, including but not limited to the payment of taxes and premiums on policies of insurance on the due date without benefit of the grace period;

(i) any transfer (defined below) of any of the Collateral without prior written consent of Holder;

(j) the death of Maker;

(k) the dissolution, merger, consolidation, change of control by transfer of 50% or more of the voting power or reorganization of LUX PHARMA HOLDINGS, LLC;

EXHIBIT B

(l) violation by Maker of any legal requirement applicable to the Loan or any of the transactions evidenced by the Loan Documents;

(m) the actual or attempted revocation of a guaranty by any guarantor who has guaranteed the obligations hereunder not yet advanced, or not yet re-advanced under a revolving credit arrangement which may be herein provided; or

(n) An Event of Default (as therein defined) occurs under any of the Loan Documents other than this Note.

Section 8. <u>Remedies</u>. Upon the occurrence of an Event of Default, Holder may at any time thereafter exercise any one or more of the following rights, powers and remedies:

(a) Holder may accelerate the Maturity Date and declare the unpaid principal balance and accrued but unpaid interest on this Note, and all other amounts payable hereunder and under the other Loan Documents, at once due and payable, and upon such declaration the same shall at once be due and payable.

(b) Holder may set off the amount owed by Maker to Holder, whether or not matured and regardless of the adequacy of any other collateral securing this Note, against any and all accounts, credits, money, securities, or other property now or hereafter on deposit with, held by or in the possession of Holder to the credit or for the account of Maker, without notice to or the consent of Maker.

(c) Holder may exercise any of its other rights, powers and remedies under the Loan Documents or at law or in equity.

Section 9. <u>Remedies Cumulative</u>. All of the rights and remedies of Holder under this Note and the other Loan Documents are cumulative of each other and of any and all other rights at law or in equity, and the exercise by Holder of any one or more of such rights and remedies shall not preclude the simultaneous or later exercise by Holder of any or all such other rights and remedies. No single or partial exercise of any right or remedy shall exhaust it or preclude any other or further exercise thereof, and every right and remedy may be exercised at any time and from time to time. No failure by Holder to exercise, nor delay in exercising, any right or remedy shall operate as a waiver of such right or remedy or as a waiver of any Event of Default.

Section 10. <u>Costs and Expenses of Enforcement</u>. Maker agrees to pay to Holder on demand all costs and expenses incurred by Holder in seeking to collect this Note or to enforce any of Holder's rights and remedies under the Loan Documents, including court costs and reasonable attorneys' fees and expenses, whether or not suit is filed hereon, or whether in connection with bankruptcy, insolvency, or appeal.

Section 11. <u>Heirs, Successors and Assigns</u>. The terms of this Note and of the other Loan Documents shall bind and inure to the benefit of the heirs, devisees, representatives, successors and assigns of the parties. The foregoing sentence shall not be construed to permit Maker to, and Maker shall not, assign the Loan, or its rights and obligations under this Note or any of the Loan Documents, except as otherwise expressly permitted under the other Loan Documents.

Section 12. <u>General Provisions</u>. Time is of the essence with respect to Maker's obligations under this Note, subject to applicable notice and/or cure periods. If more than one person or entity executes this Note as Maker, all of said parties shall be jointly and severally liable for payment of the Indebtedness. Maker and each party executing this Note as Maker hereby severally (a) waive demand, presentment for payment, notice of dishonor and of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration, and all other notices (except any notices which are specifically required by this Note or any other Loan Document), filing of suit and diligence in collecting this Note or enforcing any of the security herefor; (b) agree to any substitution, subordination, exchange, or release of any such security or the release of any party primarily or secondarily liable hereon; (c) agree that Holder shall not be required first to institute suit or exhaust its remedies hereon against Maker or others liable or to become liable hereon or to perfect or enforce its rights against them or any security herefor; (d) consent to any extensions or postponements of time of payment on this Note for any period or periods of time and to any partial payments, before or after maturity, and to any other indulgences with respect hereto,

without notice thereof to any of them; (e) submit (and waive all rights to object) to non-exclusive personal jurisdiction of any state or federal court sitting in the State of Florida and the state and county in which payment on this Note is to be made for the enforcement of any and all obligations under this Note and the other Loan Documents; (f) waive the benefit of all homestead and similar exemptions as to this Note; (g) agree that their liability under this Note shall not be affected or impaired by any determination that any title, security interest or lien taken by Holder to secure this Note is invalid or unperfected; and (h) subordinate to the Loan and the Loan Documents any and all rights against Maker and any security for the payment on this Note, whether by subrogation, agreement or otherwise, until this Note is paid in full. A determination that any provision of this Note is unenforceable or invalid shall not affect the enforceability or validity of any other provision and the determination that the application of any provision of this Note to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances. This Note may not be amended except in a writing specifically intended for such purpose and executed by the party against whom enforcement of the amendment is sought. Title and headings in this Note are for convenience only and shall be disregarded in construing it. Whenever a time of day is referred to herein, unless otherwise specified such time shall be the local time of the place where payment on this Note is to be made.

Section 13. Notices. Any notice, request, or demand to or upon Maker or Holder shall be deemed to have been properly given or made when delivered in accordance with the terms of the Loan Agreement regarding notices.

Section 14. No Usury. It is expressly stipulated and agreed to be the intent of Maker and Holder at all times to comply with applicable Florida state law or applicable United States federal law (to the extent that it permits Holder to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this Section shall control every other covenant and agreement in this Note and the other Loan Documents. If applicable state or federal law should at any time be judicially interpreted so as to render usurious any amount called for under this Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Loan, or if Holder's exercise of the option to accelerate the Maturity Date, or if any prepayment by Maker results in Maker having paid any interest in excess of that permitted by applicable law, then it is Holder's express intent that all excess amounts theretofore collected by Holder shall be credited on the principal balance of this Note and all other indebtedness secured by the Security Documents and the other Loan Documents, and the provisions of this Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Holder for the use or forbearance of the Loan shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Loan. During any time that the Loan bears interest at the maximum lawful rate (whether by application of this paragraph, the default provisions of this Note or otherwise), interest shall be computed on the basis of the actual number of days elapsed and the actual number of days in the respective calendar year.

Section 15. Lost Note. Upon receipt of an affidavit of an officer of Holder as to the loss, theft, destruction or mutilation of this Note or any other security document which is not of public record, and, in the case of any such loss, theft, destruction or mutilation, upon cancellation of this Note or other security document, Maker will issue, in lieu thereof, a replacement note or other security document in the same principal amount thereof and otherwise of like tenor.

Section 16. Pledge to the Federal Reserve. Holder may at any time pledge or assign all or any portion of its rights under the loan documents, which evidence and/or secure the Loan, including any portion of this Note, to any of the twelve (12) Federal Reserve Banks organized under Section 4 of the Federal Reserve Act, 12 U.S.C. Section 341. No such pledge or assignment or enforcement thereof shall release Holder from its obligations under any of the loan documents, which evidence and/or secure the Loan.

EXHIBIT "B"

Section 16. <u>Right of Setoff</u>. Maker hereby grants to Holder, a continuing lien, security interest and right of setoff as security for all liabilities and obligations to Holder whether now existing or hereafter arising, upon and against all deposits, credits, collateral and property, now or hereafter in the possession, custody, safekeeping or control of Holder or any entity under the common control of Holder, and their respective successors and/or assigns, or in transit to any of them. At any time, without demand or notice (any such notice being expressly waived by Maker), Holder may setoff the same or any part thereof and apply the same to any liability or obligation of Maker even though unmatured and regardless of the adequacy of any other collateral security for the Loan which is evidenced by this Note. **ANY AND ALL RIGHTS TO REQUIRE LENDER TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE LOAN WHICH IS EVIDENCED BY THIS NOTE PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF THE MAKER OR ANY GUARANTOR, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.**

Section 17. <u>Governing Law</u>. This Note and its validity, enforcement and interpretation shall be governed by the laws of the State of Florida (without regard to any principles of conflicts of laws) and applicable United States federal law.

Section 18. <u>Waiver of Jury Trial</u>. **MAKER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY, INCLUDING, WITHOUT LIMITATION, ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS OR ACTIONS OF LENDER RELATING TO THE ADMINISTRATION OF THE LOAN EVIDENCED BY THIS NOTE OR ENFORCEMENT OF THE LOAN DOCUMENTS EVIDENCING AND/OR SECURING THE LOAN, AND AGREE THAT NEITHER PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. EXCEPT AS PROHIBITED BY LAW, MAKER HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. MAKER CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR LENDER TO ACCEPT THIS NOTE AND MAKE THE LOAN.**

Section 19. <u>Venue; Jurisdiction</u>. **MAKER AGREES THAT ANY SUIT FOR THE ENFORCEMENT OF THIS NOTE OR ANY OF THE OTHER LOAN DOCUMENTS MAY BE BROUGHT IN THE COURTS OF THE STATE OF FLORIDA LOCATED IN PINELLS OR MANATEE COUNTY OR UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA AND CONSENTS TO THE NONEXCLUSIVE JURISDICTION OF SUCH COURT. MAKER HEREBY WAIVES ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH SUIT OR ANY SUCH COURT OR THAT SUCH SUIT IS BROUGHT IN AN INCONVENIENT FORUM.**

Section 20. <u>Obligations Joint and Several</u>. If Maker is comprised of more than one Person, the obligations of such Persons under this Note shall be joint and several.

Section 21. <u>Counterparts</u>. If this Note is to be executed by more than one Person, then this Note may be executed in one or more counterparts, each of which shall constitute an original and all of which, taken together, shall constitute one and the same instrument.

IN WITNESS WHEREOF, Maker has duly executed this Note as of the date first above written.

EXHIBIT "B"

Maker:

LUX PHARMA HOLDINGS, LLC

By: *[signature]*

Name: Phil Neuman

Title: Member

## SCHEDULE OF COLLATERAL

The Collateral includes, without limitation, the following:

**EXHIBIT "B"**

"Collateral" means all of the assets and properties of the Maker, including (without limitation) each of the following, in each case whether now or later acquired, created or otherwise existing (including without limitation during the pendency of any bankruptcy proceeding) and wherever located:

(i) All Receivables of the Maker;

(ii) All Inventory, equipment and other goods of the Maker, wherever located, including (without limitation) all (i) raw materials, work-in-progress and finished goods, (ii) documents, warehouse receipts, bills of lading and other documents of title now or covering any such goods, and (iii) accessions, accessories, additions, attachments, equipment, fixtures, furnishings, goods, machinery, materials, parts, replacements, supplies, tools and vehicles, whether or not located upon or affixed to any of the foregoing;

(iii) All Intellectual Property of the Maker;

(iv) All of the real property, leases and other real estate of the Maker described in the mortgages, all fixtures and improvements thereto, and all interests, wherever located, including (without limitation) all of the property;

(v) All (i) investments of the Maker, including (without limitation) any investment(s) in or to or issued by any subsidiary or affiliate of the Maker, (ii) all dividends, interest and distributions on, under or related to any of the foregoing items (whether cash, stock or otherwise) and splits and reclassifications thereof, (iii) all options, warrants and other rights to acquire any such investments, and (iv) all security entitlements and other rights, powers, privileges, remedies and interests of the referenced person in, to and under all the foregoing and all organizational documents and custody documents pertaining thereto;

(vi) All (i) advances, loans and other debts and amounts (including interest) directly or indirectly owed to the Maker by any surety, (ii) subrogation, contribution and other similar rights of the Maker against or regarding any surety, or any of its assets and properties, whether resulting from any payment made by the Maker or otherwise, and (iii) liens or credit support and other supporting obligations (as defined in the UCC) for any such advances, loans, indebtedness, amounts or rights, and (iv) security entitlements and other rights, powers, privileges, remedies and interests of the Maker in, to or under any of the foregoing and any other note, overdraft facility agreement, letter of credit application, guaranty, security agreement, hypothecation, assignment, mortgage or other instrument, agreement or document with or issued or given to the Maker creating, evidencing, governing, supporting, securing, perfecting or respecting (in whole or in part) any such advances, loans, debts, amounts or rights;

(vii) All Receivables of the Maker, all other accounts, instruments, chattel paper, documents of title and trust receipts (and the goods covered, wherever located), financial assets, investment property, security entitlements, contract rights, warranties, casualty and other insurance policies and rights, litigation claims and rights, commercial tort claims, trade names, farm products, payment intangibles and other general intangibles of the Maker, and all computer programming data and other books and records of the Maker, in each case arising from or regarding all or any part of any of the items in the foregoing subsections; and

(viii) All deposit accounts and other deposits of the Maker (whether general or special, time or demand, provisional or final, or individual or joint) maintained with the Secured Party or any of its affiliates, custodians, participants or designees; all indebtedness and other amounts and obligations owing by the Secured Party or any of its affiliates or participants to or for the credit, account or benefit of the Maker; and all assets and properties of the Maker in the possession, custody or control of the Secured Party, or any of the Secured Party's affiliates, custodians, participants or designees, including (without limitation) other monies, certificates of deposit, securities, instruments of debt or credit, documents of title and trust receipts (and the goods covered, wherever located), and other instruments and documents;

(ix) Whether now or later acquired or created, whether owned beneficially or of record and whether owned individually, jointly or otherwise, with the products and proceeds thereof, all collections, payments and other distributions and realizations with respect thereto, all other rights, powers, privileges, remedies and interests of the Maker, thereto or thereunder, and all renewals, substitutions, modifications and extensions of all of the

items in the foregoing subsections (the foregoing items will be referred to collectively as the "Collateral"), as security for the timely and full payment and satisfaction of the Obligations as and when due. (The Maker acknowledges that the reference to all real estate in paragraph (iv) above serves as a covenant to deliver future mortgages on additional real estate of the Maker as and if acquired.)

EXHIBIT "B"

"Intellectual Property" will mean all copyrights and copyrighted materials, logos, patents, service marks, trademarks, trade names, domain names, advertisements and other promotional materials (whether or not copyrighted), know-how, designs, discoveries, formulae, ideas, inventions, products, programs, computer programs and other software and firmware (whether in source code, object code or otherwise, including all "shrinkwrap" licenses that accompanied any item of equipment or software when obtained), specifications, styles, techniques and other trade secrets, works of authorship and other intellectual properties of the referenced person, including (without limitation) all applications, invention disclosures and pending items, all license royalties and other payment intangibles, the proceeds of infringement suits and other proceeds, the right to sue for past, present and future infringement, all rights corresponding thereto throughout the world and all reissues, divisions, continuations, renewals, extensions and continuations-in-part thereof, and, in the case of trademarks, the goodwill of the business to which each relates, in each case (a) whether now or later acquired, created, developed, executed, held, licensed, modified, owned or otherwise existing (including without limitation during the pendency of any bankruptcy proceeding), (b) whether acquired, created, developed, executed, held, licensed, modified or owned (i) beneficially or of record and (ii) individually, jointly or otherwise, and (c) irrespective of whether any patent, copyright, trademark or other right or protection has been or can be sought, issued or obtained in connection therewith.

"Inventory" means all goods, merchandise, and other personal property now owned or later acquired by Maker held for sale or lease, or are furnished or to be furnished under any contract of service or are raw materials, work in process, supplies or materials used or consumed in Maker's business, and all products thereof, and substitutions, replacements, additions, or accessions thereto.

"Receivables" means all accounts, contract rights, instruments, documents, chattel paper, general intangibles (including, without limitation, choses in action, tax refunds, and insurance proceeds); any other obligations or indebtedness owed to Maker from whatever source arising; all rights of Maker to receive any payments in money or kind; and all of the foregoing, whether now existing or later created or later acquired.

EXHIBIT "B"

## ALLONGE

On October 6, 2020, the principal amount of the Secured Promissory Note dated August 14, 2020 and attached as Exhibit A hereto will be and its pay-off amount is amended to $165,525.87 and that amount is not subject to any adjustments. The Note is fully due and payable on December 7, 2020.

"MAKER"

LUX PHARMA HOLDINGS, LLC

By: _____
Name:   Phil Neuman
Title:   Member
Date:   October 6, 2020

"HOLDER"

YVONNE OKEKE

By: Yvonne Okeke
Name: _____
Title: _____
Date:   10/7/2020