# FIRST AMENDMENT TO
# MEMBERSHIP INTEREST PURCHASE AGREEMENT

WHEREAS YVONNE OKEKE (the "Seller"), YVONNE ENTERPRISES LLC, a Florida limited liability company d/b/a KAY PHARMACY (the "Company"), and LUX PHARMA HOLDINGS, LLC, a Wyoming limited liability company (the "Buyer" and collectively, with the Seller and the Company, the "Parties") entered into a Membership Interest Purchase Agreement (the "Purchase Agreement") on or about August 14, 2020;

WHEREAS the Parties desire to clarify their rights and obligations regarding the Company's bank accounts and other accounts with third parties with which the Company does business;

IT IS HEREBY AGREED as follows:

1. **Bank Accounts.**

    a. On Tuesday, September 8, 2020, the Seller and the Buyer will take all necessary steps (i) to open a new Company bank account at Wells Fargo Bank, N.A. (the "WF Bank Account"); and (ii) to add the Buyer's representation, Colin Conner, as a party with observer status for the Company's existing bank account at Bank of America (the "BoA Bank Account").

    b. The Buyer will have exclusive control and signing privileges on the WF Bank Account. To the extent Wells Fargo requires the Seller to be a signer on the account during the transition period that the Seller is managing the Company pursuant its Professional Services Agreement with the Seller, the Seller agrees not to use signing authority to initiate or stop any transactions in the account.

    c. The Seller will retain exclusive control and signing privileges on the BoA Bank Account subject to the provisions of the Purchase Agreement as amended, although in his status as an account observer, Mr. Conner will have full access to all past and future transactions in that account.

    d. The Seller represents that BoA Bank Account is the Company's only existing bank account. The Seller shall close the BoA Bank Account after (i) the full transition is complete and Seller's Professional Services Agreement is terminated; and (ii) the Company's application for loan forgiveness of its SBA PPP loan has been processed.

2. <u>Company accounts with third parties</u>.

   a. On or before Tuesday, September 8, 2020, the Seller will provide the Buyer with the login user IDs, passwords and any other information necessary to access the Company's accounts with third parties, including banks, vendors, service providers, wholesalers, pharmacies, insurers, Provider Pay, McKesson or any other third party with whom the Company has an account. The Seller will also provide the names and contact information for the third-party representatives responsible for communicating with the Company regarding these accounts.

   b. Until the full transition is complete, the Buyer shall use this information to contact any third party except through a 340B program consultant to coordinate the Company's participation in 340B program. The Buyer agrees to bear the full consequences of any negative action that arises from this contact and will hold Seller harmless for any resulting disruption of business.

3. <u>Provider Pay/Zion sub bank account</u>.

   a. The Seller relinquishes all rights to the Provider Pay Account and Zion sub bank account for payments of prescriptions issued on or after August 19, 2020.

   b. On Tuesday, September 8, 2020, the Buyer and Seller shall take all necessary steps to authorize and direct Provider Pay to make all future payments through the Company's existing Zion sub bank account to the WF Bank Account. The Buyer shall continue to have access to the Provider Pay account until the full transition is complete and the Seller's Professional Services Agreement is terminated.

   c. As soon as the WF Bank Account is opened, the Seller shall make an initial wire transfer from the BoA Bank Account to the WF Bank Account equal to the sum of all payments received from Provider Pay, if any, for prescriptions issued on or after August 19, 2020.

   d. After Provider Pay starts making payments to the WF Bank Account, the Seller shall make a final wire transfer, if necessary, from the BoA Bank Account to the WF Bank Account equal to all payments, if any, for prescriptions issued on or after August 19, 2020 that were received from Provider Pay after the initial wire transfer set forth in paragraph 4.

2

4. <u>Credit card accounts</u>.

   a. On Tuesday, September 8, 2020, or as soon as the WF Bank Account is opened, the Seller shall take all necessary steps to direct existing credit card merchant accounts to make payments to the WF Bank Account.

   b. The Seller will close the Company's existing credit card account with Bank of America.

5. <u>Company car</u>.

   a. The Parties agree that the Seller may keep the Company car, provided that the Seller pay-off the existing loan used to purchase the car and transfer title of the car from the Company to the Seller. Seller is responsible for all related costs or fees.

   b. The Seller represents that there are no other Company assets to which she wants to retain possession or control.

6. <u>Accounts Receivable/Accounts Payable</u>.

   a. The Parties acknowledge that the Seller is responsible for the Company's accounts payable incurred before August 19, 2020 and the Buyer is responsible for the Company's accounts payable incurred on or after August 19, 2020.

   b. The Parties acknowledge that the Seller is entitled to the Company's accounts receivable for products sold, prescriptions issued, and services rendered before August 19, 2020 and the Buyer is entitled to the Company's accounts receivable for products sold, prescriptions issued, and services rendered after August 19, 2020.

   c. The Seller remains liable for the reconciliation and payment of the Company's pre-August 19, 2020 accounts receivable pursuant to Section 4.4 of the Purchase Agreement, although such reconciliation will include the Seller's retention of any remaining funds in the BoA Bank Account after that account is closed. For the avoidance of doubt, to the extent such remaining funds include income from post-August 19, 2020 accounts receivable, that income will be credited toward the Seller's payment of pre-August 19, 2020 accounts receivable.

7. Anticipated Volume of Prescriptions and Construction.

   a. The Parties acknowledge that the Company anticipates receiving 1000 or more prescriptions per month from the Buyer's affiliated clinics via the escribe process. The prescriptions will be exclusively for non-controlled substances such as blood pressure medication, Hepatitis C medications, and HIV-prevention ("PREP," including the medications Truvada and Descovy). Seller has no objection, and agrees, to filling these prescriptions expeditiously during the term of her Professional Services Agreement in accordance with the rules governing the Pharmacy profession and the duties of a professional pharmacies as summarized in the next sub-section.

   b. The Parties acknowledge the pharmacist has a professional duty to assure that for each prescription submitted, there is a patient-physician relationship and verifiable evidence that the patient received the prescribed medication. meds. The pharmacist will fill and dispense any medication as long as the prescription is a legitimate prescription and issued by a doctor in the normal and usual course of his or her work.

   c. Within 90 days, the Company expects to begin construction on a second-floor addition to the premises, after all local and state permits are issued. Structural engineers, architects and other inspectors will inspect the premises in preparation for the construction. Seller has no objection, and agrees, to this construction project.

8. September 8, 2020 Meeting.

   a. The Seller, represented by Yvonne Okeke, and the Buyer, represented by Colin Conner, shall meet on Tuesday, September 8, 2020, at 10:00 a.m. for the purpose of implementing the provisions of this agreement. They will meet at the Wells Fargo branch located at 1001 Havendale Blvd NW in Winter Haven, Florida for the purpose of implementing the provisions of § 1, *supra*.

   b. Seller represents that she is able to add Mr. Conner as an observer to the BoA Account without meeting in person at Bank of America and shall provide Mr. Conner with the credentials to access account information at or before the September 8, 2020 meeting.

   c. The Parties shall use their best good faith efforts to implement the provisions of §§ 2 through 5, *supra*, at the September 8, 2020 meeting or as soon thereafter as possible.

  d. Buyer has until 15th of October to finalize on valuation of the property and fulfill all other requirements on paying off the balance on the building.

  e. Buyer is to produce evidence of DEA application and to share or forward all correspondence from DEA and the Buyer.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed on its behalf by its officers thereunto duly authorized, all at or on September 8, 2020.

BUYER:

LUX PHARMA HOLDINGS, LLC

By _/s/_____

Phil Neuman, Member


SELLER:

_/s/ Yvonne Okeke_
YVONNE OKEKE

COMPANY:

YVONNE ENTERPRISES LLC

By _/s/ Yvonne Okeke_

Name: YVONNE OKEKE

Title: Manager