## SECOND AMENDMENT TO
## MEMBERSHIP INTEREST PURCHASE AGREEMENT

This Second Amendment (the "Second Amendment") to that Membership Interest Purchase Agreement entered into among YVONNE OKEKE (the "Seller"), YVONNE ENTERPRISES LLC, a Florida limited liability company d/b/a KAY PHARMACY (the "Company"), and LUX PHARMA HOLDINGS, LLC, a Wyoming limited liability company (the "Buyer" and collectively, with the Seller and the Company, the "Parties") on or about August 14, 2020, as amended by the First Amendment to Membership Interest Purchase Agreement on or about September (the "Purchase Agreement") is made and entered into effective as of October 6, 2020 (the "Second Amendment Effective Date").

WHEREAS the Parties desire to amend the Purchase Agreement to reflect the change of ownership process obligations;

IT IS HEREBY AGREED as follows:

1. Section 1.2 of the Purchase Agreement **Purchase Price** is deleted in its entirety and replaced with the following text:

(a) Total Purchase Price. The purchase price for the Membership Interests (the "Purchase Price") shall be equal to (i) $250,000.00 (the "Cash Portion"), (ii) $124,474.13 the pay-off value of the mortgage note owed by the Company for the Property pursuant to the Pay-Off Letter provided by the holder of the mortgage note (the "Pay-off Portion") (collectively with the Cash Portion the "Closing Purchase Price"), and (iii) plus a secured note amended to reflect the principal amount of $165,525.87 secured by the assets of the Buyer, including a pledge of the Membership Interests (the "Note").
(b) Closing Purchase Price Payment. The Closing Purchase Price will be paid on the Closing Date by means of wire transfer in immediately available funds in accordance with the funds flow memorandum set forth on Schedule 1.2(b).
(c) Note. Buyer will deliver the Note.

2. The last sentence of Section 4.2 of the Purchase Agreement **Best Efforts; Government Filings** is deleted, and the following text will replace the deleted text:

The Seller shall execute a Bill of Sale and Powers of Attorney dated on or before October 6, 2020 and send those executed documents to the Buyer by email by 5:00 p.m. on the date they are executed. Upon receipt of those executed documents, the Buyer shall notify the DEA and the Florida Board of Pharmacy that the Company has been sold as of the date of the executed documents, which shall be the date they are received by the Buyer (the "Regulatory Notice Date"). The Buyer shall thereafter take all necessary actions to obtain approval of the transaction by the DEA and the Florida Board of Pharmacy. In the event of a waiver Buyer shall deliver to Seller the DEA special agent's letter acknowledging the consummation of the transactions contemplated hereunder.

3. The following sentence is added to the end of Section 4.4 Accounts **Receivable/Reconciliation**:

The Parties shall conduct in a full audit of the Company's income and expenses commencing immediately when the Provider Pay system is available to reconcile the payments and claims for the period starting on August 14, 2020. Payments owed by a Party will be made upon the completion of such reconciliation. Subsequently, the Parties will conduct additional weekly reconciliations to be completed before December 5, 2020 for the purpose reconciling amounts owed or due to either Party.

4. Add Section 4.6 **Inventory.** to the Purchase Agreement:

On the Regulatory Notice Date, the Buyer and Seller shall prepare a list of all controlled substances in the possession of the Company pursuant to 21 C.F.R. § 1301.52(e)(1).

5. Add Section 4.7 **Powers of Attorney.** to the Purchase Agreement:

Powers of Attorney. Each power of attorney shall have an initial term of 90 days and may extended by another 30 days. The Seller shall not revoke the any powers of attorney prior to its expiration unless the Seller becomes aware that any such powers of attorney is being utilized in a manner that materially conflicts with the applicable rules and regulations, and such conflicting use does not cease within five (5) days of the Seller giving written notice thereof to the Buyer, citing with reasonable specificity the nature of such inconsistent use. From and after the Closing, the Buyer shall reimburse, indemnify and hold harmless the Seller and the Seller's heirs, personal representatives, successors and assigns for any claims, fines, penalties or damages relating to the use, misuse or alleged misuse of the powers of attorney by the Company and/or the Buyer after the Closing.

6. The defined term "Appraised Value" under Section 7.10 of the Purchase Agreement is deleted.

7. Conflicts, Use of Terms. In the event of conflict between the terms and conditions of the Purchase Agreement and the terms and conditions of this Second Amendment, the terms and conditions relating to the subject matter of this Second Amendment will control.

8. Full Force and Effect of Agreement. Except as expressly modified by this Second Amendment, the Purchase Agreement shall remain in full force and effect as presently written and the rights, duties, liabilities and obligations of the Parties thereto, as presently constituted, will continue in full effect. The Parties agree that all of the terms of the Purchase Agreement not otherwise modified by this Second Amendment are effective on and by the Second Amendment Effective Date with the same effect as though such terms had been made on and by such date, and each

the same effect as though such terms had been made on and by such date, and each Party hereby certifies to such effect to each other with the execution of this Second Amendment.

9. Counterparts. This Second Amendment may be executed in one or more counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument. This Second Amendment may be executed electronically (including PDF) or by facsimile. The Parties agree that facsimile and electronic copies of signatures have the same effect as original signatures.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed on its behalf by its officers thereunto duly authorized, all at or on the date and year first above written.

**BUYER:**

LUX PHARMA HOLDINGS, LLC

By *[signature]*

Phil Neuman, Member


**SELLER:**

*[signature]*
YVONNE OKEKE

**COMPANY:**

YVONNE ENTERPRISES LLC

By *[signature]*
Name: YVONNE OKEKE
Title: Manager

3