# SECURITY AGREEMENT

This Security Agreement, dated as of August 14, 2020 (this "Agreement"), by the undersigned (the "Debtor") in favor of YVONNE OKEKE (the "Secured Party").

Reference is made to that certain Membership Interest Purchase Agreement dated as of August 10, 2020, among YVONNE OKEKE ("Seller"), YVONNE ENTERPRISES LLC, a Florida limited liability company D/B/A KAY PHARMACY ("Company") and LUX PHARMA HOLDINGS, LLC, a limited liability company ("Buyer") (the "Purchase Agreement"). Unless otherwise defined herein, terms defined in the Purchase Agreement and used herein shall have the meanings given to them in the Purchase Agreement. Unless otherwise defined in this Agreement or in the Purchase Agreement, terms defined in Article 8 or 9 of the UCC are used in this Agreement as such terms are therein defined.

1. For valuable consideration, and to secure the payment and performance of the obligations hereinafter described, Debtor hereby grants to Secured Party, a security interest in the items described in <u>Exhibit A.</u> attached hereto and incorporated herein by this reference, together with all present and future accessories, additions, attachments, proceeds, products, replacements and substitutions of or to all of the foregoing, now owned or at any time hereafter acquired and wherever located (collectively referred to as the "Collateral").

2. This Agreement and the security interest created hereby are given for the purpose of securing: (a) payment of the indebtedness evidenced by the Purchase Agreement; (b) performance of each agreement of Debtor herein contained; (c) payment and performance of all existing and future obligations of Debtor to Secured Party; and (d) any and all amendments, modifications, renewals and/or extensions of any of the foregoing, including, but not limited to, amendments, modifications, renewals or extensions which are evidenced by new or additional instruments, documents or agreements or which change the rate of interest on any obligations secured hereby. It is the express purpose of Debtor and Secured Party that all obligations of Debtor to Secured Party shall be subject to Secured Party's security interest in the Collateral, regardless of whether such obligations shall be of the same class as the obligations initially contemplated at the time this transaction was entered into.

3. Debtor represents, warrants and agrees that: (a) Debtor has full title to the Collateral, free from any liens, leases, encumbrances, defenses or other claims; the security interest in the Collateral constitutes a first, prior and indefeasible security interest; and no financing statement covering the Collateral, or any part thereof, is on file in any public office; (b) Debtor will execute all documents (including financing statements) and take such other action as Secured Party deems necessary to create and perfect a security interest in the Collateral; (c) Debtor will, at its sole cost and expense, defend any claims that may be made against the Collateral; (d) except as otherwise provided herein, the Collateral shall be kept at Debtor's address set forth herein and Debtor will not, without Secured Party's prior written consent, part with possession of, transfer, sell, lease, encumber, conceal or otherwise dispose of the Collateral or any interest therein; (e) the Collateral will be maintained in good condition and repair, and will not be used in violation of any applicable laws, rules or regulations; (f) Debtor will pay and discharge all taxes and liens on the Collateral prior to delinquency; (g) Debtor will maintain insurance on the Collateral covering such risks and in such form and amount as may be required by Secured Party from time to time, with insurers satisfactory to Secured Party and with loss payable to Secured Party as its interest may appear, and upon request Debtor will deliver the original of such policy or policies to Secured Party; (h) Debtor will permit Secured Party to inspect the Collateral and Debtor's books and records (including computer files) pertaining thereto at any time; and (i) the Collateral will at all times remain personal property.

4. In the event that Debtor shall fail to perform any obligation hereunder, Secured Party may, but shall not be obligated to, perform the same, and the cost thereof shall be payable by Debtor to Secured Party immediately and without demand.

5. If this Agreement is given to secure obligations of any person or entity other than Debtor (such person or entity being hereinafter referred to as "Principal"), Debtor waives notice of default, presentment, demand for payment, protest, notice of protest, notice of nonpayment or dishonor, and all other notices and demands of any kind whatsoever; and Debtor consents and agrees that Secured Party may, from time to time, without notice or demand and without affecting the enforceability or security hereof: (a) take, alter, enforce or release any additional security for the obligations secured hereby; (b) renew, extend, modify, amend, accelerate, accept partial payments on, release, settle, compromise, compound, collect or otherwise liquidate the obligations secured hereby or any security therefor, and bid and purchase at any sale; or (c) release or substitute Principal or any guarantors of the obligations secured hereby. If any default should be made in the payment or performance of any obligations secured hereby or in the terms and conditions of any security held therefor, Secured Party may enforce this Agreement independently of any other remedy or security Secured Party may at any time hold in connection with the obligations secured hereby, and it shall not be necessary for Secured Party to proceed upon or against, and/or exhaust, any other security or remedy before proceeding to enforce this Agreement. Until all obligations secured hereby are paid in full, Debtor waives all right of subrogation.

6. There shall be a "default" or an "event of default" hereunder upon the occurrence of any of the following events: (a) default in the payment or performance of any obligations secured hereby or contained herein; or (b) occurrence of any "default" or "event of default" under any note or other obligation secured hereby or any security therefor.

7. Upon the occurrence of any event of default, all obligations secured hereby shall, at Secured Party's option, immediately become due and payable without notice or demand, and Secured Party shall have in any jurisdiction where enforcement hereof is sought, in addition to all other rights and remedies which Secured Party may have under law, all rights and remedies of a secured party under the Uniform Commercial Code and in addition the following rights and remedies, all of which may be exercised with or without further notice to Debtor: (a) to settle, compromise or release on terms acceptable to Secured Party, in whole or in part, any amounts owing on the Collateral; (b) to enforce payment and prosecute any action or proceeding with respect to any and all of the Collateral; (c) to extend the time of payment, make allowances and adjustments and issue credits in Secured Party's name or in the name of Debtor; (d) to foreclose the liens and security interests created under this Agreement or under any other agreement relating to the Collateral by any available judicial procedure or without judicial process; (e) to enter any premises where any Collateral may be located for the purpose of taking possession of or removing the same; (f) to remove from any premises where the same may be located the collateral and any and all documents instruments, files and records, and any receptacles and cabinets containing the same, relating to the Collateral, and Secured Party may, at Debtor's cost and expense, use the supplies and space of Debtor at any or all of its places of business as may be necessary or appropriate to properly administer and control the Collateral or the handling of collections and realizations thereon; (g) to receive, open and dispose of all mail addressed to Debtor and notify postal authorities to change the address for delivery thereof to such address as Secured Party may designate; (h) to sell, assign, lease, or otherwise dispose of the Collateral or any part thereof, either at public or private sale, in lots or in bulk, for cash, on credit or otherwise, with or without representations or warranties, and upon such terms as shall be acceptable to Secured Party, all at Secured Party's sole option and as Secured Party in its sole discretion may deem advisable. The net cash proceeds resulting from the collection, liquidation, sale, lease or other disposition of the Collateral shall be applied, first, to the expenses (including all attorneys' fees) of retaking, holding, storing, processing and preparing for sale, selling, collecting, liquidating and the like, and then to the satisfaction of all obligations and indebtedness or against principal or interest to be in Secured Party's absolute discretion. Debtor will, at Secured Party's request, assemble all Collateral and make it available to Secured Party at such place or places as Secured Party may designate which are reasonably convenient to both parties, whether at the premises of Debtor or elsewhere, and will make available to Secured Party all premises and facilities of Debtor for the purpose of Secured Party's taking possession of the

Case 8:21-cv-02224-VMC-AAS Document 6-5 Filed 10/11/21 Page 3 of 10 PageID 119
DocuSign Envelope ID: 86420FC2-52AE-43F6-9F0F-453C00216489

EXHIBIT "C"

Collateral or removing or putting the Collateral in saleable form. Debtor agrees to pay all costs and expenses incurred by Secured Party in the enforcement of this Agreement, including without limitation reasonable attorneys' fees, whether or not suit is filed hereon.

8. This Agreement expresses the entire understanding of the parties hereto and may not be altered or amended except with the written consent of each of the parties. This Agreement shall be binding upon and inure to the benefit of the respective heirs, executors, administrators, assigns and successors of the parties hereto. All of Secured Party's rights and remedies hereunder are cumulative and not exclusive, and are in addition to all rights and remedies provided by law or under any other agreement between Debtor and Secured Party, or otherwise. Where the context permits, the plural term shall include the singular, and vice versa. Where more than one person signs this Agreement, their obligations hereunder shall be joint and several.

9. This Agreement and your rights and obligations hereunder will be governed by and construed in accordance with the laws of the State of Florida. We agree that any legal action or proceeding with respect to this Agreement may be brought in either the courts of the State of Florida or the courts of the United States of America having jurisdiction over Hillsborough County. For the purpose of any such legal action or proceeding, we hereby submit to the exclusive jurisdiction of such courts and agree not to raise and waive any objection we may have based upon the venue of any such court. We further agree: (1) not to bring any legal action or proceeding referred in connection with this Agreement in any other court, unless the courts of the State of Florida or of the United States determine that they do not have jurisdiction in the matter; and (2) to waive any limitation on the time within which an action or proceeding may be brought under or with respect to this Agreement.

10. WE HEREBY WAIVE, AND COVENANT THAT WE WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, SUIT, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS AGREEMENT, THE SUBJECT MATTER HEREOF, ANY LOAN DOCUMENT, OR ANY OF OUR OBLIGATIONS, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT, IN TORT OR OTHERWISE.

EXHIBIT "C"

LUX PHARMA HOLDINGS, LLC
By: _____
Name: Phil Neuman
Title: Member

AGREED AND ACCEPTED:

_____
YVONNE OKEKE

# EXHIBIT A. DESCRIPTION OF COLLATERAL.

The Collateral includes, without limitation, the following:

"Collateral" means all of the assets and properties of the Borrower, including (without limitation) each of the following, in each case whether now or later acquired, created or otherwise existing (including without limitation during the pendency of any bankruptcy proceeding) and wherever located:

(i) All Receivables of the Borrower;

(ii) All Inventory, equipment and other goods of the Borrower, wherever located, including (without limitation) all (i) raw materials, work-in-progress and finished goods, (ii) documents, warehouse receipts, bills of lading and other documents of title now or covering any such goods, and (iii) accessions, accessories, additions, attachments, equipment, fixtures, furnishings, goods, machinery, materials, parts, replacements, supplies, tools and vehicles, whether or not located upon or affixed to any of the foregoing;

(iii) All Intellectual Property of the Borrower;

(iv) All of the real property, leases and other real estate of the Borrower described in the mortgages, all fixtures and improvements thereto, and all interests, wherever located, including (without limitation) all of the property;

(v) All (i) investments of the Borrower, including (without limitation) any investment(s) in or to or issued by any subsidiary or affiliate of the Borrower, (ii) all dividends, interest and distributions on, under or related to any of the foregoing items (whether cash, stock or otherwise) and splits and reclassifications thereof, (iii) all options, warrants and other rights to acquire any such investments, and (iv) all security entitlements and other rights, powers, privileges, remedies and interests of the referenced person in, to and under all the foregoing and all organizational documents and custody documents pertaining thereto;

(vi) All (i) advances, loans and other debts and amounts (including interest) directly or indirectly owed to the Borrower by any surety, (ii) subrogation, contribution and other similar rights of the Borrower against or regarding any surety, or any of its assets and properties, whether resulting from any payment made by the Borrower or otherwise, and (iii) liens or credit support and other supporting obligations (as defined in the UCC) for any such advances, loans, indebtedness, amounts or rights, and (iv) security entitlements and other rights, powers, privileges, remedies and interests of the Borrower in, to or under any of the foregoing and any other note, overdraft facility agreement, letter of credit application, guaranty, security agreement, hypothecation, assignment, mortgage or other instrument, agreement or document with or issued or given to the Borrower creating, evidencing, governing, supporting, securing, perfecting or respecting (in whole or in part) any such advances, loans, debts, amounts or rights;

(vii) All Receivables of the Borrower, all other accounts, instruments, chattel paper, documents of title and trust receipts (and the goods covered, wherever located), financial assets, investment property, security entitlements, contract rights, warranties, casualty and other insurance policies and rights, litigation claims and rights, commercial tort claims, trade names, farm products, payment intangibles and other general intangibles of the Borrower, and all computer programming data and other books and records of the Borrower, in each case arising from or regarding all or any part of any of the items in the foregoing subsections; and

(viii) All deposit accounts and other deposits of the Borrower (whether general or special, time or demand, provisional or final, or individual or joint) maintained with the Secured Party or any of its affiliates, custodians, participants or designees; all indebtedness and other amounts and obligations owing by the Secured Party or any of its affiliates or participants to or for the credit, account or benefit of the Borrower; and all assets and properties of the Borrower in the possession, custody or control of the Secured Party, or any of the Secured Party's affiliates, custodians, participants or designees, including (without limitation) other monies, certificates of deposit, securities, instruments of debt or credit, documents of title and trust receipts (and the goods covered, wherever located), and other instruments and documents;

Case 8:21-cv-02224-VMC-AAS Document 6-5 Filed 10/11/21 Page 6 of 10 PageID 122
DocuSign Envelope ID: 86420FC2-52AE-43F6-9F0F-453C00216489

EXHIBIT "C"

(ix) Whether now or later acquired or created, whether owned beneficially or of record and whether owned individually, jointly or otherwise, with the products and proceeds thereof, all collections, payments and other distributions and realizations with respect thereto, all other rights, powers, privileges, remedies and interests of the Borrower, thereto or thereunder, and all renewals, substitutions, modifications and extensions of all of the items in the foregoing subsections (the foregoing items will be referred to collectively as the "Collateral"), as security for the timely and full payment and satisfaction of the Obligations as and when due. (The Borrower acknowledges that the reference to all real estate in paragraph (iv) above serves as a covenant to deliver future mortgages on additional real estate of the Borrower as and if acquired.)

"Intellectual Property" will mean all copyrights and copyrighted materials, logos, patents, service marks, trademarks, trade names, domain names, advertisements and other promotional materials (whether or not copyrighted), know-how, designs, discoveries, formulae, ideas, inventions, products, programs, computer programs and other software and firmware (whether in source code, object code or otherwise, including all "shrinkwrap" licenses that accompanied any item of equipment or software when obtained), specifications, styles, techniques and other trade secrets, works of authorship and other intellectual properties of the referenced person, including (without limitation) all applications, invention disclosures and pending items, all license royalties and other payment intangibles, the proceeds of infringement suits and other proceeds, the right to sue for past, present and future infringement, all rights corresponding thereto throughout the world and all reissues, divisions, continuations, renewals, extensions and continuations-in-part thereof, and, in the case of trademarks, the goodwill of the business to which each relates, in each case (a) whether now or later acquired, created, developed, executed, held, licensed, modified, owned or otherwise existing (including without limitation during the pendency of any bankruptcy proceeding), (b) whether acquired, created, developed, executed, held, licensed, modified or owned (i) beneficially or of record and (ii) individually, jointly or otherwise, and (c) irrespective of whether any patent, copyright, trademark or other right or protection has been or can be sought, issued or obtained in connection therewith.

"Inventory" means all goods, merchandise, and other personal property now owned or later acquired by Borrower held for sale or lease, or are furnished or to be furnished under any contract of service or are raw materials, work in process, supplies or materials used or consumed in Borrower's business, and all products thereof, and substitutions, replacements, additions, or accessions thereto.

"Receivables" means all accounts, contract rights, instruments, documents, chattel paper, general intangibles (including, without limitation, choses in action, tax refunds, and insurance proceeds); any other obligations or indebtedness owed to Borrower from whatever source arising; all rights of Borrower to receive any payments in money or kind; and all of the foregoing, whether now existing or later created or later acquired.

DocuSign Envelope ID: 86420FC2-52AE-43F6-9F0F-453C00216489
Case 8:21-cv-02224-VMC-AAS Document 6-5 Filed 10/11/21 Page 7 of 10 PageID 123

EXHIBIT "D"

# Membership Interest Pledge Agreement

August 14, 2020
YVONNE OKEKE
9780 N 56TH ST
SUITE D
TEMPLE TERRACE, FL 33617

Re: Pledge Agreement

Reference is made to that certain Membership Interest Purchase Agreement dated as of August 10, 2020, among YVONNE OKEKE ("Seller"), YVONNE ENTERPRISES LLC, a Florida limited liability company D/B/A KAY PHARMACY ("Company") and LUX PHARMA HOLDINGS, LLC, a limited liability company ("Buyer") (the "Purchase Agreement"). To secure the payment and performance of the obligations under the Purchase Agreement, LUX PHARMA HOLDINGS, LLC ("we" or "us") pledges a security interest in the Collateral (as defined below) to YVONNE OKEKE ("you"), pursuant to the terms of this letter agreement (this "Agreement").

Unless otherwise defined herein, terms defined in the Purchase Agreement and used herein shall have the meanings given to them in the Purchase Agreement. Unless otherwise defined in this Agreement or in the Purchase Agreement, terms defined in Article 8 or 9 of the UCC are used in this Agreement as such terms are therein defined.

To secure the performance of all obligations in your favor under the Purchase Agreement and each of the other Loan Documents, the undersigned hereby pledges to you, and grants you a security interest in and to: (1) 100% of the Membership Interests (the "Interests"), of YVONNE ENTERPRISES LLC; and (2) any other "Collateral" (as hereinafter defined) whether now owned or hereafter acquired by Pledgor, whether now or hereafter existing or arising and wherever located. The term "Collateral", as used in this Agreement, means the Interests and any cash, securities or other property paid or otherwise distributed on, with respect to, or in exchange for the Interests or any other Collateral as well as all of our rights and privileges with respect to such Collateral. If we receive such other Collateral, we will promptly deliver the same to you in the form received.

We hereby represent and warrant to you that: (1) we are the sole owner of the Interests; (2) the Interests constitute approximately 100 percent of the issued and outstanding Membership Interests of the YVONNE ENTERPRISES LLC, which is the only class of Membership Interest entitled to elect managers; (3) the Interests are validly issued in our name, fully paid and non-assessable and, except as described above, are not subject to any encumbrance, claim or right in favor of any party other than you under this Agreement; (4) this Agreement has been duly authorized and constitutes our legal, valid and binding obligation, enforceable against us in accordance with its terms; (5) no authorization, approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required either for the pledge by us of the Interests pursuant to this Agreement or for the execution, delivery or performance of this Agreement by us, or for your exercise of the rights provided for in this Agreement or the remedies in respect of the Interests pursuant to this Agreement; (6) the pledge of the Interests to you pursuant to this Agreement creates a valid and perfected first priority security interest in your favor in the Interests securing the performance of the Loan Documents and the payment of the Note; and (7) except as described above, there are no options, warrants, privileges or other rights outstanding pursuant to which any Membership Interest of the YVONNE ENTERPRISES LLC may be acquired.

On the date of this Agreement, we shall deliver to you all certificates or instruments representing or evidencing the Interests and any other Collateral, which shall be in suitable form for transfer by delivery, or shall be accompanied by duly executed instruments of transfer or assignment in blank, all in form and substance satisfactory to you. All such certificates or instruments shall be held by you pursuant hereto.

We agree that we will not transfer, assign or encumber any of our rights in any of the Collateral except pursuant to this Agreement.

We will take such action and execute such additional documents as you may request in connection with this Agreement or to enforce your rights hereunder. If we fail to take any such action or execute any such document, we hereby authorize you to do so in our name and on our behalf. Upon payment or performance in full of all obligations secured hereby, you will, at our request and expense, reassign or transfer the Interests and Collateral to us.

You and your permitted successors and assigns will have all of the rights, powers and privileges of a secured party under the UCC in force and effect from time to time with respect to the security interest granted by this Agreement.

Upon the occurrence and during the continuance of any Event of Default under the Purchase Agreement, without notice to us: (a) you will be entitled to vote the Interests and any other Collateral held by you under this Agreement, and at all such times we will not be entitled to vote the Interests or any other Collateral and (b) you may take such action as you deem advisable with respect to the Collateral, including, without limitation, transferring any of the Collateral into your name or the name of your nominee, and selling any of the Collateral at a public or private sale on such terms as you deem appropriate. At any such sale you may be the purchaser.

You will not be required to resort to or pursue any of your rights or remedies under or with respect to any other security for, or guaranty of payment of, any of the obligations secured by this Agreement before pursuing any of your rights or remedies under this Agreement.

We hereby waive any and all defenses, whether statutory or decisional, to the enforcement of this Agreement arising by virtue of that fact, including, without limitation, any defenses regarding the exoneration or discharge of sureties provided by law. Without limiting the generality of the foregoing, we agree that our obligations hereunder will not be affected by your failure to assert any claim or demand or to enforce any right or remedy against Debtor under the provisions of any Loan Document, under any extension or renewal of any provision thereof, or under any rescission, waiver, amendment or modification of any of the terms or provisions of any Loan Document.

Similarly, our obligations hereunder will not be affected by: your failure to perfect any security interest in any other security held by you for any of the Obligations; your failure to exercise any right or remedy against any other guarantor or accommodation pledgor of any of the Obligations; your taking and holding security or collateral for the payment of any other guaranties of Obligations and your exchanging, enforcing, waiving and releasing any such security or collateral; your applying such security or collateral and directing the order or manner of sale thereof as you, in your discretion, may determine; your settling, releasing, compromising, collecting or otherwise liquidating the Obligations and any security or collateral therefor in any manner, as you may determine; or any default, failure or delay, or any other act or thing, that might, in any manner or to any extent, vary our risk hereunder or which would otherwise operate to discharge us as a matter of law or equity.

This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the undersigned. You and your permitted successors and assigns will have all of the rights, powers and privileges of a secured party under the UCC in force and effect from time to time with respect to the security interest granted by this Agreement.

This Agreement and your rights and obligations hereunder will be governed by and construed in accordance with the laws of the State of Florida. We agree that any legal action or proceeding with respect to this Agreement may be brought in either the courts of the State of Florida or the courts of the United States of America, having jurisdiction over Hillsborough County. For the purpose of any such legal action or proceeding, we hereby submit to the exclusive jurisdiction of such courts and agree not to raise and waive any objection we may have based upon the venue of any such court. We further agree: (1) not to bring any legal action or proceeding referred in

**EXHIBIT "D"**

connection with this Agreement in any other court, unless the courts of the State of or of the United States determine that they do not have jurisdiction in the matter; and (2) to waive any limitation on the time within which an action or proceeding may be brought under or with respect to this Agreement.

WE HEREBY WAIVE, AND COVENANT THAT WE WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, SUIT, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS AGREEMENT, THE SUBJECT MATTER HEREOF, ANY LOAN DOCUMENT, OR ANY OF OUR OBLIGATIONS, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT, IN TORT OR OTHERWISE.

If the foregoing is acceptable to you, please sign the enclosed copy of this letter in the space provided below, whereupon this letter will become an agreement between us as of the date first above written.

Very truly yours,

LUX PHARMA HOLDINGS, LLC

By: _____

Name: Phil Neuman

Title: Member

AGREED AND ACCEPTED:

_____
YVONNE OKEKE

Page 3

## BILL OF SALE

KNOW ALL MEN BY THESE PRESENTS, that YVONNE OKEKE, party of the first part and owner of 100% of the membership interest in YVONNE ENTERPRISES, LLC., a Florida limited liability company, d/b/a KAY PHARMACY in consideration of the sum of Five Hundred and Fifty Thousand and NO/100 ($540,000.00) Dollars, of which Three Hundred Seventy Four Thousand Four Hundred Seventy Four and 13/100 ($374,474.13) Dollars is in lawful money of the United States and a Promissory Note for the remainder, One Hundred Sixty Five Thousand Five Hundred Twenty Five and 87/100 ($165,525.87) Dollars, paid to him/her/them by LUX PHARMA HOLDINGS, LLC, a Wyoming limited liability company and party for the second part, the receipt of both the lawful money of the United States and the Promissory Note is hereby acknowledged, has/have granted, bargained, sold, transferred and delivered, and by these presents does/do grant, bargain, sell, transfer and deliver unto the said party of the second part, his/her/their executors, administrators, and assigns, as of October 7, 2020, the following goods and chattels:

One Hundred Percent (100%) of the membership interest in and to YVONNE ENTERPRISES, LLC., a Florida limited liability company, d/b/a KAY PHARMACY, a Florida limited liability company.

TO HAVE AND TO HOLD the same unto the said party of the second part, his/her/their executors, administrators, and assigns forever.

AND I/we do, for ourselves, heirs, executors and administrators, covenant to and with the said party of the second part, his/her/their executors, administrators, covenant to and with the said party of the second part, our executors, administrators, and assigns, that we are lawful owners of the said goods and chattels; that they are free from all encumbrances; that we have good right to sell the same aforesaid, and that we will warrant and defend the sale of the said property, goods and chattels hereby made, unto the said party of the second part, our executors, administrators and assigns against the lawful claims and demands of all person whomsoever.

IN WITNESS WHEREOF, I/We have hereunto set my/our hand and seal this October 7, 2020.

Signed sealed and delivered in the presence of:

SELLER:

By: _____
Yvonne Okeke, individually

Witness:

BUYER:
LUX PHARMA HOLDINGS, LLC

By: _____
Phil Neuman, member

Witness: